## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

DIVISION 5, LLC,

                                 Plaintiff,

                   -vs-

FORA FINANCIAL ADVANCE LLC,

                                 Defendant.

-----------------------------------------------------------------------X

Civ. A. No. 1:24-cv-06870

**ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND AND TEMPORARY RESTRAINING ORDER**

**UPON** the annexed Declaration of the Plaintiff DIVISION 5, LLC, by its principal CONRAD BARKER, sworn to the 10th day of September, 2024, and the exhibits annexed thereto; upon the Declaration of JONATHAN E. NEUMAN, ESQ., attorney for Plaintiff, dated September 11, 2024; and upon all the prior papers and proceedings heretofore had herein, it is

**ORDERED**, that Defendant FORA FINANCIAL ADVANCE LLC show cause before a term of this Court, at Room _____, United States Courthouse, 500 Pearl Street, in the City of New York, County of New York and State of New York, on _____, 2024, at _____ o'clock in the _____noon thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure:

   1)  Restraining and enjoining Defendant FORA FINANCIAL ADVANCE LLC during the pendency of this action from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiff to Defendant, including but not limited to via the issuance of UCC lien letters;

   2)  Directing Defendant to withdraw any lien letter previously sent out;

   3)  Directing that during the pendency of this action, any UCC lien letter sent by Defendant or that has already been sent by Defendant shall be null and void and of no

force or effect, and that any third party served with such UCC lien letter ignore same; and it is further

**ORDERED** that, sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65, the Defendant is temporarily restrained and enjoined from issuing any UCC lien letters to any of Plaintiff's customers or to any other third-party that might be holding assets belonging to or owing to Plaintiff, and that Defendant is directed to withdraw any lien letter previously sent, any such lien letter being null and void; and it is further

**ORDERED** that, sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65, the Defendant is temporarily restrained and enjoined from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiff to Defendant, including but not limited to UCC liens; and it is further

**ORDERED** that security in the amount of $_____ be posted by the plaintiffs prior to _____, 2024, at _____ o'clock in the _____noon of that day; and it is further

**ORDERED** that personal service of a copy of this order and the supporting documents upon which it is based upon Defendant FORA FINANCIAL ADVANCE LLC via _____ on or before _____ o'clock in the _____noon, September _____, 2024, shall be deemed good and sufficient service thereof.

Dated: New York, New York

Issued: _____

_____
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

DIVISION 5, LLC,

                      Plaintiff,                Civ. A. No. 1:24-cv-06870

          -against-

FORA FINANCIAL ADVANCE LLC,

                      Defendant.

--------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION

## FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Jonathan E. Neuman, Esq.
176-25 Union Turnpike, Suite 230
Fresh Meadows, NY 11366
(347) 450-6710
(718) 228-3689 *facsimile*
jnesq@jenesqlaw.com

*Attorney for Plaintiff*

September 11, 2024

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ..............................................................................1

STANDARDS APPLICABLE .........................................................................2

ARGUMENT ................................................................................................3

I.   PLAINTIFF SATISFIES THE GROUNDS FOR A PRELIMINARY INJUNCTION
     AND A TEMPORARY RESTRAINING ORDER .....................................................3

CONCLUSION.............................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*5 Eatery Corp. v. City of N.Y.*,
　　408 F. Supp. 3d 424 (S.D.N.Y. 2019)....................................................................3

*AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*,
　　740 F. Supp. 2d 465 (S.D.N.Y. 2010)....................................................................2

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
　　784 F.3d 887 (2d Cir. 2015)...................................................................................2

*Cnty. of Nassau, N.Y. v. Leavitt*,
　　524 F.3d 408 (2d Cir. 2008)...................................................................................2

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
　　559 F.3d 110 (2d Cir. 2009)...................................................................................2

*Google LLC v. Starovikov, Civil Action*,
　　2021 U.S. Dist. LEXIS 252274 (S.D.N.Y. Dec. 16, 2021) ................................15

*Grand River Enter. Six Nations, Ltd v. Pryor*,
　　481 F.3d 60 (2d Cir. 2007).....................................................................................3

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
　　650 F. Supp. 3d 204 (S.D.N.Y. 2023).................................................................10

*Haymount Urgent Care Pc v. Gofund Advance*,
　　No. 22-cv-1245, 2022 U.S. Dist. LEXIS 50229 (S.D.N.Y. Mar. 21, 2022)..12, 14

*In re McCorhill Pub., Inc.*,
　　86 B.R. 783 (Bankr. S.D.N.Y. 1988)...................................................................12

*Ivy Mar. Co. v. C.R. Seasons, Ltd.*,
　　907 F. Supp. 547 (E.D.N.Y. 1995) ......................................................................13

*Lateral Recovery LLC v. Queen Funding, LLC*,
　　2022 U.S. Dist. LEXIS 129032 (2022)......................................................8, 10, 11

*Lateral Recovery, LLC v. Capital Merch. Servs., LLC*,
　　632 F. Supp. 3d 402 (S.D.N.Y. 2022)....................................................................7

**STATE CASES**

*Abraham v American Gardens Co.*,
    189 A.D.3d 741, 136 N.Y.S.3d 148 (2d Dep't 2020) ............................................. 6

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
    37 N.Y.3d 320, 157 N.Y.S.3d 800.................................................................... 5, 8

*Adler v. Marzario*,
    200 A.D.3d 829, 155 N.Y.S.3d 337 (2nd Dep't 2021) ........................................ 6

*Bakhash v Winston*,
    134 A.D.3d 468, 19 N.Y.S.3d 887 (1st Dept 2015)............................................. 6

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*,
    105 A.D.3d 178, 961 N.Y.S.2d 86 (1st Dep't 2013) ........................................... 6

*Casita, LP v. Maplewood Equity Partners (Offshore) Ltd.*,
    17 Misc. 3d 1137, 851 N.Y.S.2d 68 (Sup. Ct. NY Cty 2007) ........................... 14

*Ctr. for Specialty Care, Inc. v. CSC Acquisition I, LLC*,
    185 A.D.3d 34, 127 N.Y.S.3d 6 (1st Dep't 2020) .............................................. 4

*Davis v. Richmond Capital Grp., LLC*,
    194 A.D.3d 516, 150 N.Y.S.3d 2 (1st Dep't 2021) ......................................... 7, 8

*Konishi v. Lin*,
    88 A.D.2d 905 (2d Dep't 1982)......................................................................... 13

*People v. Richmond Capital Grp. LLC*,
    80 Misc. 3d 1213, 195 N.Y.S.3d 637 (Sup. Ct. NY Cty 2023) ...................... 7, 11

*Reuschenberg v. Town of Huntington*,
    16 A.D.3d 568, 791 N.Y.S.2d 652 (2nd Dep't 2005)........................................ 13

*Roopchand v Mohammed*,
    154 A.D.3d 986, 62 N.Y.S.3d 514 (2d Dep't 2017)............................................ 6

*Sau Thi Ma v. Xaun T. Lien*,
    198 A.D.2d 186, 604 N.Y.S.2d 84 (1st Dep't 1993) ......................................... 14

*Schneider v Phelps*,
    41 N.Y.2d 238, 359 N.E.2d 1361, 391 N.Y.S.2d 568 (1977).............................. 6

*Unique Laundry Corp. v. Hudson Park NY LLC*,
    55 A.D.3d 382, 865 N.Y.S.2d 203 (1st Dep't 2008) ......................................... 13

*World Glob. Capital, LLC v. Gateway Int'l 360 LLC*,
 2019 N.Y. Misc. LEXIS 52778 (Sup. Ct. Kings Cty 2019) .......................... 13, 15

**FEDERAL RULES**

Federal Rules of Civil Procedure
 Rule 65(b) ................................................................................................................. 2

Plaintiff respectfully submits this Memorandum of Law in support of its emergency

motion for a preliminary injunction and temporary restraining order:

## **PRELIMINARY STATEMENT**

Plaintiff is in dire need of a preliminary injunction and immediate emergency temporary

restraining order, as Defendant's bad faith actions have caused Plaintiff to face immediate,

irreparable harm.  Absent the Court's immediate intervention, Plaintiff will be forced to

permanently shut down its business within a matter of days.  As Plaintiff can demonstrate an

irreparable harm in the absence of the injunction and either (a) a likelihood of success on the

merits or (b) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in the movant's favor, it is respectfully

submitted that the Court should grant a preliminary injunction and temporary restraining order,

specifically a temporary restraining order directing Defendant to withdraw all of its UCC lien

letters and declaring that the UCC lien letters need not be honored at this time, as well as a

general injunction against any further attempts by Defendant to issue any more UCC lien letters

during the pendency of this case.

## **STATEMENT OF FACTS**

Due to the exigency of the situation, Plaintiff respectfully refers the Court to the

Complaint and accompanying Declaration from Plaintiff.  In short, as is relevant to this motion,

Defendant fraudulently induced Plaintiff to enter into a criminally usurious merchant cash

advance loan agreement.  Defendant then refused to honor the supposed reconciliation provisions

set forth in the agreement, and upon Plaintiff's subsequent predictable default, issued supposed

UCC lien letters to Plaintiff's customers, causing these customers to refuse to issue

approximately $90,000 in payments.  As a result, Plaintiff no longer has money necessary to

fund its operations.  Unless the Court acts immediately, Plaintiff will be forced to permanently

shut down after the end of this week.


## STANDARDS APPLICABLE

Rule 65(b) of the Federal Rules of Civil Procedure authorizes a court to issue a TRO.

The standards for granting a TRO are the same as those governing preliminary injunctions.  AFA

Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).  To

be entitled to a Temporary Restraining Order in this Circuit, a party must demonstrate: "(1)

irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the

merits or (b) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in the movant's favor."  Cnty. of Nassau,

N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008).  "A party seeking a preliminary injunction

must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions

going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an

injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public

interest would not be disserved' by the issuance of an injunction.  Benihana, Inc. v. Benihana of

Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (ellipsis in original).  Of these factors, "[a]

showing of irreparable harm is 'the single most important prerequisite for the issuance of a

preliminary injunction."  Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d

Cir. 2009) (internal quotation marks omitted).  "To satisfy the irreparable harm requirement,

Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is

neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'"  <u>Grand River Enter. Six Nations, Ltd v. Pryor</u>, 481 F.3d 60,66 (2d Cir. 2007).

**ARGUMENT**

## I.     <u>PLAINTIFF SATISFIES THE GROUNDS FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER</u>

As shown in Plaintiff's Complaint, and discussed in Plaintiff's accompanying Declaration, the Defendant's bad faith and criminal actions have all but destroyed and put a stranglehold on Plaintiff's business, which will be forced to permanently shut down within days absent immediate action from this Court.

Accordingly, Plaintiff is in dire need of a preliminary injunction, and a temporary restraining order pending the determination of the motion.  Defendant must be ordered to withdraw its UCC lien letters, and the UCC lien letters must be declared as unenforceable during the pendency of the motion.

Here a preliminary injunction and temporary restraining order should be granted.

First, Plaintiff can demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation.  "Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'"  <u>725 Eatery Corp. v. City of N.Y.</u>, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (brackets in original).

At the outset, Plaintiff can clearly demonstrate a likelihood of success on the merits on its breach of contract claim (or sufficiently serious questions going to the merits), since the agreement on its face provided for reconciliation of the weekly payment amount to match Plaintiff's actual receivables, which Defendant refused to do, and which thereby led to the

Page **3** of 16

alleged default which Defendant used as its pretext to issue the alleged UCC lien letters.

Because it was Defendant who was in default, thereby relieving Plaintiff of any obligations (*see, e.g.*, <u>Ctr. for Specialty Care, Inc. v. CSC Acquisition I, LLC</u>, 185 A.D.3d 34, 44, 127 N.Y.S.3d 6, 15 (1st Dep't 2020) ("even though plaintiffs were obliged to provide their financial records under the APA, defendants' failure to file a timely CON application and to perform under the lease were 'prior material breach[es]' constituting 'an uncured failure of performance that relieved [plaintiffs] from performing [their] remaining obligations under the contract.'"); <u>Alloy Advisory v. 503 W. 33rd St. Assocs.</u>, 195 A.D.3d 436, 436, 144 N.Y.S.3d 854, 854 (App. Div. 1st Dep't 2021) ("when one party repudiates a contract, the other party is entitled to claim damages for a total breach by the repudiating party, **and any future performance by the nonbreaching party is excused**.") (emphasis added)), Plaintiff was never in breach, and Defendant was never entitled to issue any lien letters.

Likewise, Plaintiff can demonstrate a likelihood of success on the merits on its fraudulent inducement claim, since as shown in Plaintiff's accompanying declaration, Defendant's agent stated in writing that Defendant does not record UCC liens, which Defendant clearly does.

As Plaintiff can demonstrate a likelihood of success on at least one claim, the TRO and preliminary injunction should be granted.

But Plaintiff can demonstrate a likelihood of success on its third claim as well.

With respect to its declaratory judgment cause of action, for the reasons that have been found by multiple courts, including courts in this Circuit (as set forth in Plaintiff's complaint), it is clear that Defendant's actions have been criminally usurious and the agreement with Plaintiff therefore void *ab initio*.  On its face, the agreement carries an annual interest rate of more than 35% per annum, or 10% more than the maximum 25% rate permitted under New York Penal Law.

As cited in the Complaint, under New York law, this agreement is therefore void *ab initio* and unenforceable. *See* Adar Bays, LLC v. GeneSYS ID, Inc., 37 N.Y.3d 320, 157 N.Y.S.3d 800, 179 N.E.3d 612 (2021). "Our Court has recognized for more than a century that the economy changes and with it, the ability of lenders to extract unlawful interest rates through novel and increasingly sophisticated instruments, noting: 'The usurer usually seeks to conceal the usury, and to accomplish his purpose by indirect methods; but no matter what the disguise, if the court can see that the real transaction was the loan or forbearance of money at usurious interest, its plain and imperative duty is to so declare'. Indeed, a common tool of lenders in the 1800s to avoid enforcement of usury law penalties—civil or criminal—was to disguise the loan as a 'sale of choses in action' exempted from the law. We noted then that '[t]he shifts and devices of usurers to evade the statutes against usury, have taken every shape and form that the wit of man could devise, but none have been allowed to prevail'. Again, as discussed above, in the 1960s, the legislature—in response to the 'vacuum' in the law that failed to deter the usurious exploitation of corporations by criminal syndicates—ended the practice by limiting the corporate exception." Id. at 342.

As the Court of Appeals noted, "where usury is established, the transaction is entirely void, preventing recovery of both principal and interest. Thus, historically, an usurious loan in New York was considered void ab initio and the borrower was relieved of repayment of the principal. A harsh remedy indeed, but one that reflects 'the legislature's consistent condemnation of the 'evils of usury'. The forfeiture of interest and capital serves a strong deterrent effect—one the legislature has repeatedly affirmed." Id. *at* 331-32. Thus, New York usury statutes are a deeply rooted tradition designed to protect both individuals and corporations—especially insecure businesses in need of financial assistance— from the "evils of usury." Id. "The purpose of usury laws, from time

immemorial, has been to protect desperately poor people from the consequences of their own desperation." Schneider v Phelps, 41 N.Y.2d 238, 243, 359 N.E.2d 1361, 391 N.Y.S.2d 568 (1977). *See also* Bakhash v Winston, 134 A.D.3d 468, 469, 19 N.Y.S.3d 887 (1st Dept 2015) (where a contract is usurious, it is void and unenforceable); Roopchand v Mohammed, 154 A.D.3d 986, 988, 62 N.Y.S.3d 514 (2d Dep't 2017) ("A usurious contract is void and relieves the borrower of the obligation to repay principal and interest thereon.") (internal quotations marks omitted); *see also* General Obligations Law § 5-511; Abraham v American Gardens Co., 189 A.D.3d 741, 744, 136 N.Y.S.3d 148 (2d Dep't 2020).

General Obligations Law § 5-501(2) prohibits any person from charging, taking, or receiving any money as interest on a loan at a rate exceeding the maximum permissible interest rate. *See Roopchand v Mohammed*, 154 A.D.3d 986, 988, 62 N.Y.S.3d 514 (2d Dep't 2017). "The maximum per annum interest rate for a loan or forbearance of money is 16% under New York's civil usury statute and 25% under the state's criminal usury statutes." Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc., 105 A.D.3d 178, 182, 961 N.Y.S.2d 86, 89 (1st Dep't 2013); *see also* General Obligations Law § 5-501(1); Banking Law § 14-a(1).

While Defendant will undoubtedly try to argue that the agreement is actually a so-called "merchant cash advance" and not a usurious loan, the Courts have been clear that it is not the form of the agreement that controls the determination, but rather the substance of the agreement and how it was performed in practice. Blue Wolf Capital Fund II, 105 A.D.3d at 182 ("To determine whether a transaction is usurious, courts look not to its form but to its substance or real character."); Adler v. Marzario, 200 A.D.3d 829, 830, 155 N.Y.S.3d 337, 338 (2nd Dep't 2021) ("Here, the loan agreement is usurious on its face, and thus the loan and mortgage are void on the ground of usury, as a matter of law. Contrary to the plaintiff's contention, his

characterization of the loan as a business or investment loan, as opposed to a consumer loan, does not make it non-usurious."); *see also* <u>Davis v. Richmond Capital Grp., LLC</u>, 194 A.D.3d 516, 517, 150 N.Y.S.3d 2, 4 (1st Dep't 2021) ("the selection of daily payment rates that did not appear to represent a good faith estimate of receivables") (finding MCA agreement to be a usurious loan where the payment amount that did not actually represent a good faith estimate of the merchant's receivables); <u>People v. Richmond Capital Grp. LLC</u>, 80 Misc. 3d 1213(A), 195 N.Y.S.3d 637 (Sup. Ct. NY Cty 2023) (finding MCA agreements to be usurious loans because even though on paper it satisfied the 3 factors, in practice the reconciliation provision was not followed and under the terms of the agreement the MCA companies were fully covered in the event of a bankruptcy).

The Federal Courts have said the same. *See, e.g.*, <u>Lateral Recovery, LLC v. Capital Merch. Servs., LLC</u>, 632 F. Supp. 3d 402, 451-54 (S.D.N.Y. 2022):

> The Capital Defendants and Glass contend that the agreements cannot form the basis of collection of unlawful debt RICO violation because the agreements are not loans but rather are sales of future receivables. If they are not loans, Defendants argue, the agreements cannot be usurious. That is because under New York law, "[i]f the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'" *Seidel v. 18 E. 17th Street Owners, Inc.*, 79 N.Y.2d 735, 598 N.E.2d 7, 11-12, 586 N.Y.S.2d 240 (N.Y. 1992) (quoting *Orvis v. Curtiss*, 157 N.Y. 657, 52 N.E. 690, 691 (N.Y. 1899)).

> The Court has recently considered the principles applicable to whether a funding agreement constitutes a loan or is a sale of future receivables. *See Fleetwood*, 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207. The analysis "usually is guided by examining three factors to 'determine whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.'" 2022 U.S. Dist. LEXIS 100837, [WL], at *9 (quoting *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 122 N.Y.S.3d 309, 312 (2d Dep't 2020)). "The three factors provide only a guide to [the] analysis[;] [t]hey do not dictate the conclusion," and they operate in tandem. *Id.* (citing  cases); *see also Haymount Urgent Care PC v. GoFund Advance*, __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 112768, 2022 WL 2297768, at *7 (S.D.N.Y. June 27, 2022) (explaining that "while these three factors may be

relevant to the analysis, they are far from dispositive," and citing with approval *Fleetwood*'s language that "[t]he three factors provide only a guide to [the] analysis. They do not dictate the conclusion."). **The Court applies familiar principles of contract interpretation. It reads the agreement as a whole, and "substance—not form—controls."** *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 157 N.Y.S.3d 800, 179 N.E.3d 612, 621-22 (N.Y. 2021). **It thus is not sufficient that that agreement is stated to have a reconciliation provision, an indefinite term, and be non-recourse if those provisions are illusory.** *See Queen Funding*, **2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*5-6 (holding that complaint pled that an agreement was a loan because it sufficiently and plausibly alleged that a reconciliation provision was a "sham" and that, while the agreement had a "seemingly indefinite term," "a de facto fixed term plausibly exists");** *Haymount*, 2022 U.S. Dist. LEXIS 112768, 2022 WL 2297768, at \*7 (holding that an agreement was a loan notwithstanding a reconciliation provision because "the actual structure of the provision makes it often impossible to use and leaves the lender with substantial discretion to prevent adjustment"); *Fleetwood*, 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207, at \*13 (holding that an agreement was a loan where, while it nominally had a reconciliation provision, that provision was largely illusory); *Davis v. Richmond Capital Grp., LLC*, 194 A.D.3d 516, 150 N.Y.S.3d 2, 4 (1st Dep't 2021) (holding that a complaint sufficiently alleged that agreements were loans subject to usury laws based on, among other things, the discretionary nature of the reconciliation provisions and provisions authorizing defendants to collect on the personal guaranty in the event of plaintiff business's inability to pay or bankruptcy). The Court judges the agreement "by its real character, to determine whether it constitutes a loan." *Fleetwood*, 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207, at \*9 (alterations adopted) (internal quotation marks omitted) (quoting *LG Funding, LLC*, 122 N.Y.S.3d at 313). Ultimately, the three guides reduce to one overarching principle. "The hallmark of a loan is that the lender 'is absolutely entitled to repayment under all circumstances,' or put otherwise, the 'principal sum is repayable absolutely.'" 2022 U.S. Dist. LEXIS 100837, [WL] at \*9 (internal quotation marks omitted) (quoting *LG Funding, LLC*, 122 N.Y.S.3d at 312). The root of the analysis involves the question of "whether the transaction involves a transfer of risk." 2022 U.S. Dist. LEXIS 100837, [WL] at \*10; *see Haymount*, 2022 U.S. Dist. LEXIS 112768, 2022 WL 2297768, at \*7 (stating that "the *LG Funding* decision's holding is ultimately about whether the transaction represented a real transfer of risk"); *Queen Funding*, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*4 ("[W]hen determining whether a transaction was a true sale of receivables or a loan, '[t]he root of [the analysis] is the transfer of risk.'" (quoting *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1069 (2d Cir. 1995))). As the New York Court of Appeals recognized just last year, "parties who are not directly exposed to market risk in the value of the underlying assets are likely to be lenders, not investors." *Adar Bays, LLC*, 179 N.E.3d at 622; *see also OriginClear Inc. v. GTR Source, LLC*, 2021 U.S. Dist. LEXIS 239013, 2021 WL 5907878, at \*5 (W.D.N.Y. Dec. 14, 2021) ("[T]he

primary indicator of a loan is the debtor's absolute obligation to repay the principal sum without risk to the creditor of the debtor's business failure.").

The Court rejects the argument of the Capital Defendants that this Court in *Fleetwood*—and presumably the courts in *Haymount* and *Queen Funding*—misconstrued New York law. Dkt. No. 39 at 1-2. The argument rests on the premise that "the Court held that a buyer of accounts receivable must prove that a transaction is a 'true sale' under *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1069 (2d Cir. 1995)." *Id.* at 2. That argument is mistaken. Rather than holding that a merchant "must prove that a transaction is a 'true sale' under *Endico Potatoes*," *id.* at 2, the Court explained that "the essential question under New York law is whether the contracting party 'is absolutely entitled to repayment under all circumstances,'" *Fleetwood*, 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207, at *9 (quoting *LG Funding*, 122 N.Y.S.3d at 312). The Court noted that the three factors set forth in *LG Funding* usually guides the analysis but that the factors set forth under *Endico Potatoes* may also help the Court conclude whether the debt was repayable absolutely or whether the purported purchaser actually took on some risk that the merchant would be unable to pay. 2022 U.S. Dist. LEXIS 100837, [WL] at *9-10. The Court did not base its conclusion solely on the *Endico Potatoes* factors; it expressly stated that under either sets of factors, the agreement was a loan: "*Whether the Court looks to the* LG Funding *or* Endico Potatoes *factors, the result here is the same.*" 2022 U.S. Dist. LEXIS 100837, [WL] at *10 (emphasis added).

Indeed, just last month, the analysis employed in *Fleetwood, Haymount*, and *Queen Funding* was endorsed by one New York court, which reconsidered its prior decision denying a motion to vacate a default judgment on the grounds that an agreement giving rise to judgment the was really a usurious loan. *See Hi Bar Capital LLC v. Parkway Dental Servs., LLC*, 2022 WL 3757589 (Sup. Ct. Kings Cnty. Aug. 25, 2022). On reargument, the court granted a motion to vacate the default judgment, explaining that "the specific provisions challenged"—including a reconciliation provision that defendants asserted was "functionally impossible to implement"—"do not by themselves raise any issues concerning the agreement," but that "there are other arguments presented which raise significant defenses whether the agreement in this case is really a high-interest loan." *Id.* at *3. The court continued: "Recently, Federal courts have engaged in a more thorough and exacting scrutiny of merchant cash advance agreements, looking at the agreements in a holistic and comprehensive manner and the conclusions they have reached are compelling." *Id.* The court cited heavily from *Fleetwood* and compared provisions in agreement at issue there to the provisions this Court found relevant in *Fleetwood*, including provisions that a default occurs upon only a limited number of instances of insufficient funds and granting a security interest in all assets. *Id.* at *3-4. It then concluded: "[i]n this case, there are surely questions raised whether the agreement comports with the requirements necessary to be considered a genuine cash advance agreement." *Id.*

(emphasis added); <u>Haymount Urgent Care PC v. GoFund Advance, LLC</u>, 650 F. Supp. 3d 204, 211 n.5 (S.D.N.Y. 2023):

> Defendants make strong arguments that the agreements themselves, in light of their provisions for both prospective and retrospective reconciliation of the initially estimated remittance amounts to a business's actual revenues as they come in, do not on their face constitute unlawful loans, rather than bona fide purchases of future revenues. **As such, the analysis as to whether such agreements constitute usurious loans under a particular state's laws would likely turn on a number of facts about how they operate in practice.** *Haymount*, 2022 U.S. Dist. LEXIS 112768, 2022 WL 2297768, at *6 **(noting that 'the outcomes' in New York cases in which similar agreements are alleged to be usurious loans 'are strongly fact-bound and vary considerably.')**

(emphasis added).

Because Defendant refused to reconcile, that also means that there was not an indefinite term, because although on its face the agreement might claim to be indefinite, here since Defendant wasn't reconciling and could declare a default for a missed payment (which ultimately Defendant did), there was in fact a de facto fixed term. *See, e.g.*, <u>Lateral Recovery LLC v. Queen Funding, LLC</u>, 2022 U.S. Dist. LEXIS 129032, at *16-17 (S.D.N.Y. July 20, 2022:

> The Master Agreement provides for a seemingly indefinite term, in stating that the merchant must continue to pay the daily amount until it has fully paid the amount of receivables that Queen Funding purportedly purchased -- i.e., the amount FTE owes for the cash advance. However, a de facto fixed term plausibly exists. The period of payment can be easily calculated by dividing the amount FTE owes by the amount of daily payments. A failure to pay will not indefinitely extend the term because the Merchant agreement provides that a default will occur if two daily payments are not made during the term of the agreement and the merchant does not contact Queen Funding in advance. Upon an event of Default, Queen Funding has the right to exercise all remedies in connection with the Agreement, including accelerating the debt and collect the entire amount owed, enforcing its security interest in the collateral (i.e., all of FTE's receivables) and enforcing the guarantee.

And finally, with regard to recourse in bankruptcy, there is nothing in the agreement that relieved Plaintiff of the alleged requirement to repay by filing bankruptcy. Rather, all the agreement says is that "Seller going bankrupt or going out of business, **in and of itself**, does not

constitute a breach of this Agreement." (emphasis added). Yet here, because Defendant knew

that $8,112.33 a week did not represent 12% of Plaintiff's weekly receivables, Defendant had

full recourse in bankruptcy, because Plaintiff were already in default from the very moment the

agreement was signed, which meant that Defendant had the immediate right to accelerate the

debt and enforce it against the guarantor and all cross-collateralized entities. Thus, Defendant

had full recourse in bankruptcy. *See, e.g.*, <u>Lateral Recovery LLC v. Queen Funding, LLC</u>, 2022

U.S. Dist. LEXIS 129032, at *17-18 (S.D.N.Y. July 20, 2022) ("This factor weighs in favor of

finding the transactions to be loans. The Merchant Agreements' exacting event of default

provision, the "Protections against Default" provision making payment due immediately and

permitting seizure of the collateral in case of a default and the personal guaranty provision

effectively shield the lender from the risk of loss when the creditor is nearly or actually bankrupt.

The lender bears nearly no risk of the receivables' non-performance and would recover the

Purchased Amount even if the receivables turned out to be uncollectable."); <u>People v. Richmond</u>

<u>Capital Grp. LLC</u>, 80 Misc. 3d 1213(A), 195 N.Y.S.3d 637 (Sup. Ct. NY Cty 2023):

> Lastly, although the MCAs indicate that a Borrower's failure to make payments
> because it went bankrupt would not constitute a breach of, or default under, the
> MCAs (provided that no other breach occurred), this too was a sham. The Predatory
> Lenders made sure that their Borrowers were in default on Day 1 of the MCAs by
> requiring that the Borrowers falsely represent that the collateral (*i.e.*, the accounts
> receivable) was free and clear of all other loans (*see, e.g.*, NYSCEF Doc. No. 8, §
> 2.10) and that they would not pledge those assets to others (*id.*, at 6). The Predatory
> Lenders knew this was false (NYSCEF Doc. Nos. 136, 699). The Predatory Lenders
> knew that their money was behind other lenders as to the pledged accounts
> receivable (NYSCEF Doc. No. 150, at 4 ["I care about 110 days **in 5th or 6th**"]
> [emphasis added]). The Addendum to the MCAs also makes clear that a few missed
> payments constituted a default (*see, e.g.*, NYSCEF Doc. No. 8 ["**NSF Fee
> Standard** - $50.00 (each) up to **THREE TIMES ONLY** before a default is
> declared"] [emphasis in original]; *see also* NYSCEF Doc. No. 699). Additionally,
> Section 2.9 of the MCAs makes clear that any encumbrance of the collateral would
> make the full amount immediately due and payable and that the Predatory Lenders
> could enforce the personal guaranties that they required the Borrowers to provide.

Thus, bankruptcy never relieved the Borrowers or the guarantors of their obligation under the MCAs or the guaranties.

Thus, because the transaction was really a usurious loan and not a legitimate merchant cash advance, the UCC lien is void and without effect, and consequently Defendant's UCC lien letters are similarly null and void.  *See, e.g.*, In re McCorhill Pub., Inc., 86 B.R. 783, 794-95 (Bankr. S.D.N.Y. 1988) ("As to SFC's loan, this court has determined that this loan is usurious. Therefore, the loan and its supporting documents, including the SFC security agreement with the debtor which grants to SFC a security interest in the debtor's equipment, accounts receivable, inventory and personalty, are void and without effect. GNYSB was never entitled to file a UCC-1 as to the debtor's inventory.")

Accordingly, Plaintiff can demonstrate (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, for each one of its causes of action.

With regard to the prospect of irreparable injury, this too can be demonstrated.  As discussed by Plaintiff, absent immediate injunctive relief by this Court, they will be forced to shut down after this week due to lack of funds to keep the business operating since all of their revenue has been withheld from them as a result of Defendant's UCC lien letters.  This is an irreparable harm for which later payment of money damages would be inadequate.  *See, e.g.*, Haymount Urgent Care Pc v. Gofund Advance, No. 22-cv-1245 (JSR), 2022 U.S. Dist. LEXIS 50229, at *7-8 (S.D.N.Y. Mar. 21, 2022) ("Haymount has amply demonstrated that it would suffer irreparable harm absent a preliminary injunction. The papers establish that defendants' issuance of UCC lien letters has frozen its bank and health insurance accounts, effectively locking up the urgent care center's finances. If the urgent care center is unable to collect insurance reimbursements, and thus cannot make payroll or purchase medical supplies, there is a

material risk of the business's collapse. That would constitute an irreparable harm for which later payment of money damages would be inadequate."); Ivy Mar. Co. v. C.R. Seasons, Ltd., 907 F. Supp. 547, 565 (E.D.N.Y. 1995) ("Numerous courts have held that harm to a company's operations, reputation, good will or customer relations is irreparable because money damage cannot provide adequate compensation for such injuries."); Reuschenberg v. Town of Huntington, 16 A.D.3d 568, 570, 791 N.Y.S.2d 652, 653 (2nd Dep't 2005) ("The plaintiffs also established that they would suffer irreparable harm if the preliminary injunction was not issued. This requirement may be met by proof that the defendant's act threatens to destroy an ongoing business concern."); Konishi v. Lin, 88 A.D.2d 905, 905 (2d Dep't 1982) ("Plaintiff has established that if defendant is not enjoined from interfering with plaintiff's use of the College Point office, he will suffer irreparable injury by the loss of patients and damage to his reputation."); Unique Laundry Corp. v. Hudson Park NY LLC, 55 A.D.3d 382, 384, 865 N.Y.S.2d 203, 205 (1st Dep't 2008) ("Plaintiff satisfied the irreparable injury requirement for preliminary injunctive relief by explaining why it would become insolvent if denied."); World Glob. Capital, LLC v. Gateway Int'l 360 LLC, 2019 N.Y. Misc. LEXIS 52778, at *17-18 (Sup. Ct. Kings Cty 2019) ("Mr. Zarker's entire livelihood would be in jeopardy and his business would most likely have to shut down. Mr Zarker would not be able to obtain adequate compensation by invoking the legal damage remedy[,]" and the legal remedy which would be available would not 'be as complete, practicable and efficient as the equitable one.' Mr. Zarker would not be able to be reimbursed for losing his entire business that he built from the ground up.") (internal citations omitted).

With respect to the balance of the equities, this too tips in favor of Plaintiff.  Defendant has been engaged in blatantly criminally usurious behavior.  Courts in this Circuit have granted

injunctive relief against MCA companies in other pending cases involving similar actions. *See, e.g.*, <u>Stellar Beach Rentals, LLC et al v. Redstone Advance, Inc. et al</u>, 1:23-cv-00955-VSB, at ECF Doc. 8 (S.D.N.Y. 2023) ("I find, based on the declaration of John Kozak and the papers submitted in support of a temporary restraining order and order to show cause, that irreparable injury will result because the levies, writs of attachment, or comparable restrictions placed on his accounts will lead to the collapse of his business. (Doc. 5-2 ¶¶ 11, 15.) Courts in this District, presented with similar circumstances, have granted temporary restraining orders similar in scope to this one. Additionally, I find, based on the declaration of Jonathan E. Neuman, that time is of the essence and there is not sufficient time to provide notice to Defendants, given the urgent nature of the relief sought."); <u>Christine D. Collins, PC et al v. MCA Receivables, LLC</u>, No. 23-cv-00353-AT at Docket Doc. No. 7 (S.D.N.Y. Jan. 18. 2023); <u>Inventory Generation Inc. et al v. Silverline Services Inc. et al</u>, No. 22-cv-10529-PAE at Docket Doc. No. 29 (S.D.N.Y. Jan. 9, 2023); <u>Haymount Urgent Care Pc v. Gofund Advance</u>, No. 22-cv-1245 (JSR), 2022 U.S. Dist. LEXIS 50229 (S.D.N.Y. Mar. 21, 2022).

The equities prong "requires the court to look to the relative prejudice to each party accruing from a grant or denial of the requested relief." <u>Sau Thi Ma v. Xaun T. Lien</u>, 198 A.D.2d 186, 187, 604 N.Y.S.2d 84, 85 (1st Dep't 1993), *lv dismissed* 83 N.Y.2d 847, 634 N.E.2d 606, 612 N.Y.S.2d 110 (1994). The balance of the equities strongly favors the granting of an injunction where, as here, the movant's imminent harm, if an injunction is not granted, outweighs any prejudice to the plaintiff from the granting of the injunction. <u>Casita, LP v. Maplewood Equity Partners (Offshore) Ltd.</u>, 17 Misc. 3d 1137(A), 851 N.Y.S.2d 68 (Sup. Ct. NY Cty 2007), *aff'd*, 874 N.Y.S.2d 123 (1st Dep't 2009) (the equities favors an injunction where movant would

lose his entire investment and the enjoined party will "merely have to do without, or find other sources to supplant" its potential recovery during the pendency of the action).

Here, as shown, Plaintiff will lose its entire business if the Defendant is not enjoined. Defendant, on the other hand, would suffer no prejudice, other than having to potentially wait to collect on the judgment should it ultimately prevail.  As such, there is no prejudice to Defendant, but substantial prejudice to Plaintiff.  Defendant clearly abused the MCA "form" in bad faith and in breach of contract to accelerate its unlawful debt and put a stranglehold on Plaintiff's business. Thus, a preliminary injunction and temporary restraining order would do nothing more than keep the status quo that would have existed absent Defendant's unlawful actions.  As such, the balance of equities clearly favors Plaintiff.  *See, e.g.*, World Glob. Capital, LLC v. Gateway Int'l 360 LLC, 2019 N.Y. Misc. LEXIS 52778, at *18-19 (Sup. Ct. Kings Cty 2019) ("The balance of hardships tips decisively in favor of granting a preliminary injunction here. As set forth above, Mr. Zarker and Gateway have and will have to continue to suffer irreparable harm if WGC enforces any liens or judgments. On the other hand, WGC would suffer no prejudice if its prosecution and execution of the judgment are temporarily enjoined. WGC has an adequate remedy at law if the restraining order is later on extinguished, they can just start enforcement efforts at a later date. Mr. Zarker and Gateway do not have the luxury of waiting. If enforcement efforts of the fraudulent and retaliatory judgment are initiated, Gateway and Mr. Zarker would be forced to go out of business.")

Finally, the granting of an injunction would also obviously serve the public interest.  *See, e.g.*, Google LLC v. Starovikov, Civil Action No. 1:21-cv-10260-DLC, 2021 U.S. Dist. LEXIS 252274, at *10 (S.D.N.Y. Dec. 16, 2021) ("[T]he public interest is clearly served by enforcing statutes designed to protect the public.")  As shown above, as the Court of Appeals recently

reiterated, preventing usury, in whichever disguise and form it takes, is the strong public policy of New York, and has been so for over a century.

Accordingly, it is respectfully submitted that a temporary restraining order and preliminary injunction are patently warranted and should be granted. Plaintiff is begging the Court to maintain the status quo and prevent its business from being shut down until the rights of the parties can be determined.

## CONCLUSION

For the reasons demonstrated above, it is respectfully submitted that the Court should grant a preliminary injunction and temporary restraining order 1) restraining and enjoining Defendant from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiff to Defendant, including but not limited to UCC liens; 2) directing Defendant to withdraw its current lien letters; 3) directing that any such lien letters are null and void and of no force or effect, and that any third party served with such letter may ignore same; together with such other, further, and different relief as to this Court may be just and proper.

Dated: Fresh Meadows, New York
      September 11, 2024

                        /Jonathan E. Neuman/
                        JONATHAN E. NEUMAN, ESQ.
                        *Attorney for Plaintiff*
                        176-25 Union Turnpike, Suite 230
                        Fresh Meadows, NY 11366
                        (347) 450-6710
                        (718) 228-3689 *facsimile*
                        jnesq@jenesqlaw.com