UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
DIVISION 5, LLC,

                Civ. A. No. 1:24-cv-06870
        Plaintiff,

  -vs-            **DECLARATION IN SUPPORT**

FORA FINANCIAL ADVANCE LLC,
        Defendant.
-------------------------------------------------------------------X

  I, CONRAD BARKER, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the managing member of plaintiff, DIVISION 5, LLC, in the above-captioned matter, and I make this declaration in support of Plaintiff's motion for an emergency temporary restraining order and preliminary injunction. I am familiar with all of the facts and circumstances relevant to a proper determination herein.

2. As discussed in the Complaint, which is annexed hereto as **EXHIBIT 1**, and which I specifically adopt and incorporate by reference, Plaintiff DIVISION 5, LLC is a minority-owned and Veteran-certified business that specializes in structural steel and miscellaneous metals fabrications and installation for general contractors and construction managers. We have been in business for 11 years and are based out of Connecticut.

3. In April 2023, I began receiving unsolicited emails from Victor Dweck, a gentleman who is either an agent or partner of Defendant, wanting to speak with me about providing a loan to our small business. In his email, Mr. Dweck stated that when his company loans, they never file UCC liens against the business. A copy of the email is annexed hereto as **EXHIBIT 2**. Mr. Dweck followed up again in June 2023.

4. I responded to Mr. Dweck's email and the two of us spoke via phone at the number he provided. During our conversation, I told him that it was a slow pay period for the company as

1

my customers only had to pay at a minimum of net 30, while our employees and vendors obviously had to be paid immediately.

5. Mr. Dweck stated that he could definitely assist with that, because he worked with a number of private lenders for precisely this type of situation. I filled out the documentation that was sent to me and provided all requested documents, and Mr. Dweck informed me that I was approved for a $350,000 loan with a term of 15½ months, and that I would be receiving a call from Defendant. Defendant thereafter called me, and sent me a contract to sign, which is annexed hereto as **EXHIBIT 3**. At the time, I was told by Defendant that I would be receiving a loan of $354,200 with a payback of 12% of the principal, and that I would have to make initial weekly payments of $8,112.33. Defendant did not give me the opportunity to review the contract or have it reviewed with an attorney. Rather, they stayed on the phone with me and just told me to click in all of the DocuSign boxes in which I needed to click.

6. On the basis of these statements that had been made to me by Mr. Dweck and Defendant, Plaintiff agreed to enter into the contract.

7. While we were able to make the payments initially, there was no way that the company could maintain these crushing payments, especially as our business began to slow down. In October 2023, I called Defendant and spoke with a representative named Maniq Williams. I advised Mr. Williams that I was reaching out because my weekly loan payments were too high, which was significantly damaging the business' cash flow and overall financial health. I requested manageable loan repayment terms. Mr. Williams asked me to provide my bank statements, and then said that if they adjusted the payments, I would be paying even more, and so I should continue paying $8,112.33 every week.

8. In November 2023, I reached out again to Defendant to complain that Plaintiff could not

afford Defendant's excessive weekly payments, which were simply too high to be supported by the income we were bringing in. I spoke with a Mackenzie Holsten, and explained again that the company could not afford to make the payments and asked for a more reasonable number. I also expressed my confusion as to how the payback amount was going to be $502,964, when I had been told that my payback for the loan was going to be a flat 12%, which should have only been $42,504 in interest and not $148,764. I said that the numbers did not make any sense and asked for an amortization schedule for the loan. I did not get a good answer from Ms. Holsten, but Defendant lowered the weekly payment to $4,877.64, which lasted until February 2024.

9. Once they lowered the amount of the payment, every month Defendant would ask me for my bank statements, which I always provided. The company had a very good January and February, and in February 2024, Defendant switched the payment back to $8,112.33 per week. However, in March business went to a crawl, and I complained to Defendant that the weekly payments were killing us and that springs were always difficult because there was not a lot of business. In April 2024, the payment was lowered to $2,201.93. In May 2024, Defendant raised the weekly payment to $5,631.08, and in June 2024 they snapped it back to $8,112.33, even though I had no money coming in. I called and left numerous messages with Defendant during this time period complaining that the amounts were too high and that the Company's revenues could not support them, but nobody got back to me. On June 4, I explicitly emailed Defendant and told them that I had no money coming in for weeks, and that my wife had had to deposit her own personal funds into the account in order to cover payroll. Defendant said they would do a reconciliation and advise me of the result, but they never did. I continued to call and protest that Plaintiff could not afford to make these payments and needed lower payments because our projections for the next few months were low, and that Defendant was not properly calculating

3

the amount that the company was receiving, because they were making calculations based on past revenue rather than projections of our future revenue.  Defendant ignored my communications.  I laid off 60% of my staff and was still unable to make the weekly payments. I called and emailed Defendant and begged for the payments to be lowered or paused, but nothing was done and the payments stayed the same.  Copies of these emails are annexed hereto as **EXHIBIT 4**.

10.  I did not have enough funds to make the weekly payments, and even though I had advised Defendant of this, they continued to debit my account for the $8,112.33 per week, which created more debt for me as the bank fees continued to pile up since I did not have the funds for the debits to clear. I continued to call and leave messages for Defendant, all of which were ignored.  On July 16, 2024, a payment was returned for lack of funds in the account.  Defendant emailed and once again said they would do a reconciliation and let me know what the result was, and I asked if payments could be held off for a little bit because business was very slow and we had little coming in.  I provided all requested documentation.  However, Defendant did not change the payment amount and continued to try to debit the account for the $8,112.33 per week, which continued to not have sufficient funds.  I specifically informed Defendant that we did not have the money to cover the payments and that every time they tried to debit, we would just get hit with more fees.  However, Defendant ignored the email and continued to debit.  Copies of these emails are annexed hereto as **EXHIBIT 5**.  In August I had no choice but to close the bank account because I was concerned that the bank would initiate some sort of fraud inquiry against the company since our account kept getting debited for funds we did not have.

11.  Thereafter, on August 12, I received a communication from Defendant informing me that my bank account had been closed and that now I was in breach of contract and demanding

another bank account to make the payments. Two days later, Defendant mailed lien notices to my customers telling them that they had to make all payments of outstanding money owed to Defendant, in complete contradiction to Mr. Dweck's statement to me inducing me to enter into the agreement with his company that they don't file UCC liens.

12. Since then, Plaintiff has not received a single payment from these customers, and there is approximately $90,000 in outstanding revenue that our customers have not paid to us.

13. Unless this money is immediately released to us, this will be the last week that Plaintiff will be in business, as we have no money to pay our employees or vendors, and we will have no choice but to shut down the company that we spent 11 years building from scratch. I am devastated and heartbroken that, absent immediate relief from this Court, the business that I built from scratch will be gone due to Defendant's predatory actions.

14. Accordingly, I throw myself on the floor and urgently and humbly implore this Court to issue the requested preliminary injunction and temporary restraining order, directing Defendant to withdraw their UCC lien letters and enjoining Defendant from issuing any additional lien letters, so that we can receive our outstanding payments from our customers and not lose our company.

**WHEREFORE**, it is respectfully requested that Plaintiff's motion for a temporary restraining order and preliminary injunction be granted in its entirety, together with such other, further, and different relief as to this honorable Court may be just and proper.

This declaration is submitted pursuant to 28 U.S.C. §1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2024 in Somers, Connecticut.

_____
By: CONRAD BARKER