UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DIVISION 5, LLC,

                                                Case No.: 24-cv-06870 (JPO)

                          Plaintiff,

          -against-

FORA FINANCIAL ADVANCE LLC,

                          Defendant.
----------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

---

MURRAY LEGAL, PLLC
Attorneys for Defendant
FORA FINANCIAL ADVANCE LLC
170 Old Country Rd., Ste 608
Mineola, New York, 11501
cmurray@murraylegalpllc.com
516-260-7367

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ 2

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 2

   I.     PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF SHOULD BE DECIDED IN THE ARBITRATION ...................................................................................... 2

   II.    ALTERNATIVELY, PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED  ON THE MERITS ......................................... 6

   a.    Standard ................................................................................................................ 6

   b.    Plaintiff Has Not Demonstrated Irreparable Harm. ......................................... 7

   c.    Plaintiff Has Not Demonstrated A Likelihood Of Success On The Merits. ................. 10

   i.    Plaintiff's Claim For A Declaratory Judgment That The Agreement Is Usurious Is Meritless As A Matter of Law ............................................................................... 10

   ii.    Plaintiff's Claim For Breach of Contract Fails To Plead A Cause Of Action .............. 13

   iii.   Plaintiff's Claim For Breach of Contract Fails To Plead A Cause Of Action .............. 17

   d.    The Balance of Equities Favors Denying Plaintiff's Motion......................................... 20

   III.   IF THE COURT GRANTS THE MOTION IT SHOULD REVISE THE BOND AMOUNT ............................................................................................................. 21

CONCLUSION ........................................................................................................... 22

## PRELIMINARY STATEMENT

Defendant, Fora Financial Advance, LLC ("Fora," or "Defendant")[1], submits this Memorandum of Law in Opposition to the motion (the "Motion") by Order to Show Cause (the "OTSC"), filed on September 11, 2024, by Plaintiff Division 5, LLC ("D5," or "Plaintiff"). Plaintiff's Order to Show Cause sought both a preliminary injunction (the "Injunction") and a temporary restraining order (the "TRO"). Essentially, the TRO sought to immediately void any and all UCC 9-406 Assignment Notices issued by Fora to the D5's account-debtors – despite Fora having both a statutory right via the UCC, and a contractual right based on the parties' Agreement, to send such notices to account debtors. On September 12, 2024, Fora filed a letter objection to the TRO application. D.E. 9. On September 13, 2024, after a telephonic hearing on the pending application, the Court signed the proposed OTSC and granted the TRO. Thus, the Court ordered that pending the hearing on the Injunction,

> the Defendant is temporarily restrained and enjoined from issuing any UCC lien letters to any of Plaintiff's customers or to any other third-party that might be holding assets belonging to or owing to Plaintiff, and that Defendant is directed to withdraw any lien letter previously sent, any such lien letter being null and void; and . . .
>
> the Defendant is temporarily restrained and enjoined from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiff to Defendant, including but not limited to UCC liens . . .

D.E. 10, at 2.

Plaintiff now opposes the entry of the Preliminary Injunction which would extend this relief pending adjudication of this action. This Court should deny the Motion on multiple bases. First,

---

[1] N.B. Fora assigned its ownership of the transaction over a year ago to Fora Financial Warehouse, LLC ("FFW"). It is axiomatic that FFW stands in the shoes of its assignor, subject to all the same rights and liabilities. *Snowbridge Advisors LLC v Soho Sq. Capital LLP*, 2023 WL 8368630, at *10 (2d Cir 2023) ("Under New York law, 'an assignee stands in the shoes of its assignors,' . . .").

as explained in the Motion to Dismiss and Compel Arbitration, the plain terms of the Agreement's Arbitration Clause require that the substantive claims in this action be adjudicated in arbitration. The arbitration clause also indisputably covers injunctive relief.  Given the foregoing, and the availability of injunctive relief – including emergency relief – in both FAA and JAMS proceedings, this Court should deny the Motion and compel arbitration, where the Plaintiff may seek its injunctive relief in the proceeding that will also adjudicate its substantive claims.

Second, the Motion should be denied because it does not come close to satisfying Plaintiff's burden to demonstrate, by clear and convincing evidence, that it meets all the requirements for the drastic remedy of injunctive relief.  At the outset, Plaintiff has utterly failed to demonstrate that it will likely suffer irreparable harm absent the injunction – indeed, in support of its application, Plaintiff submits a mere two paragraphs of conclusory testimony as to a threat to its business.  This complete lack of any detailed testimony, evidence or proof whatsoever dooms the Motion at the outset.  Given that irreparable harm must be considered first, and that the failure to demonstrate it means the Court need not even consider the remaining factors, the Court's inquiry can and should end there.  Nonetheless, the Motion fails on the other factors as well, as there is no likelihood of success on the merits of Plaintiff's substantive claims, nor does the balance of equities tip in its favor, where it is currently the net beneficiary under the Agreement.

For the reasons set forth herein, the Court should grant Fora's motion in its entirety.

## ARGUMENT

### I.     PLAINTIFF'S   APPLICATION   FOR   INJUNCTIVE   RELIEF SHOULD BE DECIDED IN THE ARBITRATION.

As argued in Plaintiff's Motion to Dismiss and to Compel Arbitration, the plain and unambiguous terms of the Agreement's arbitration clause (the "Arbitration Clause") require dismissing or staying this action in favor of arbitration of the substantive claims in the Complaint.

2

*See* D.E. 16, at 4-7.  Here, the relevant question is whether this Court should grant Plaintiff's application, as opposed to dismissing this action such that Plaintiff can seeks its injunctive relief from in the arbitration, where its substantive claims will be adjudicated.[2]  That question is, too, clearly answered by the plain language of the Arbitration Clause, which explicitly includes "claims for . . . injunctive [ ] relief."  D.E. 17-1, p. 11, Section 21 ("Scope").  That should be the end of the inquiry.  *See Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228 (2013) *(citing Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63 (2010))* ("courts must "rigorously enforce arbitration agreements according to their terms.").

A decision of the U.S. District Court for the District of Columbia is on all fours and highly persuasive here.  The procedural posture is essentially identical: in *TK Services, Inc. v. RWD Consulting, LLC,* TKS brought a breach of contract claim against RWD.  After the Complaint was filed, TKS filed a motion for a preliminary injunction. RWD opposed the motion, and filed a motion to dismiss and to compel arbitration. There, like here, the District Court had before it an arbitration agreement which contained a broad "binding arbitration clause" that covered all the claims at law in the Complaint.  Notably, however, the agreement was entirely silent on the issue of injunctive relief.  The Court noted that "plaintiff urges the Court to reach the merits of the motion for a preliminary injunction anyway, arguing that the arbitration clause 'does not specifically address injunctive or other equitable relief, and it does not provide that arbitration is the sole and exclusive forum for determination of interim injunctive relief.'"  *TK Servs*, 263 F Supp 3d at 71.

The Court flatly rejected that argument:

---

[2] The law is clear: "[a]n arbitrator has the power to grant preliminary injunctive relief, and district courts have the power to confirm and enforce such awards of equitable relief." *Bowers v. Northern Two Cayes Company Limited*, 2016 WL 3647339 at p. 2 (W.D.N.C. Cir. 2016).

> This argument is not consistent with the broad, clear, mandatory language of the arbitration clause. The parties agreed that "[a]ny controversy or claim between the [parties] arising out of or in connection with this Agreement, including *any* claim concerning an alleged breach . . . *shall* be subject to final settlement by arbitration." Mentor Agreement ¶ 11 (emphasis added). So the fact that claims for injunctive relief are not specifically mentioned does not lead to the conclusion that they were carved out; the plain reading of the provision suggests that any carve out had to be explicit.

*Id.* (emphasis in original).[3]  Of course, that analysis applies here with even greater force: the Agreement explicitly covers injunctive relief.

The *TK Services* Court then observed that "[t]his conclusion is bolstered by the fact that an exception for injunctive relief was not necessary because the rules of the arbitral forum provide for interim and injunctive relief."  *Id.*  That, too, is the case here.  The Agreement provides that the arbitrator must arbitrate under AAA of JAMS rules. D.E. 17-1, p. 12, Section 21 ("Arbitration Process").  In arbitrations before the American Arbitration Association, a tribunal is empowered to take "whatever interim measures it deems necessary, including injunctive relief and measures for the protection and conservation of property."  AAA Commercial Rule 37.  Further, and of particular relevance here, if interim relief is required before the presiding arbitrator has been

---

[3] The language of the parties' Arbitration Clause is similarly all-encompassing:

> This Clause governs the Purchaser, Seller(s), and any Guarantor(s) (together, the "Parties"), their heirs, successors, assigns, and third parties related to any Dispute. In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the Parties to this Agreement and/or Purchaser's servicers, assignees, and agents. This includes all claims even indirectly related to your application and agreement(s) with us. . . .  It includes disputes based upon contract, tort, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for monetary damages and injunctive or declaratory relief. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

D.E. 17-1, p. 11, Section 21 ("Scope").

4

appointed or panel has been convened, the AAA may appoint an emergency arbitrator. AAA Commercial Rule 38. Similar rules exist in JAMS. *See, e.g*., JAMS Rules 2, 24.

  The decision in S*mart Technologies ULC v. Rapt Touch Ireland Ltd.* is also highly relevant and persuasive here. There, the U.S. District Court for the Northern District of California denied an application for a TRO where the underlying breach of contract action was subject to arbitration, notwithstanding that the contract allowed the parties to seek emergency relief from a court in certain limited circumstances.[4] According to the court: "With the parties having agreed that their underlying dispute should be arbitrated, [the plaintiff] has offered no explanation for why a federal court (rather than an arbitrator) should adjudicate the request for emergency relief." *Smart Techs*., 197 F. Supp. 3d 1204, at 1205 (N.D. Cal. 2016).[5] Important to the court's decision was the fact that, like here, "the arbitration rules allow [the plaintiff] to request emergency relief from an arbitrator." *Id.* The court emphasized also that, under the arbitration rules, "an emergency arbitrator would be assigned within a day, and a schedule would be set for considering the application for relief within a handful of days." *Id.* That, too, is the case here.[6] Based on the

---

[4] Once again, there being no carve-out in the parties' broad Arbitration Clause, the reasoning in *Smart Tech.* applies with even greater force here.

[5] Relevant here also is the proposition that Courts should deny injunctive relief where it is otherwise available through arbitration, because that availability necessarily negates the traditional requirement of irreparable harm. *See, e.g., Gold v Maurer,* 251 F Supp 3d 127, 136 (DDC 201) (availability of AAA Rule 38 emergency arbitrator appointment cut against assertions of irreparable harm).

[6] Where emergency relief is sought under AAA or JAMS rules, adjudication is swift. AAA will appoint an emergency arbitrator within one business day. Am. Arb. Ass'n, Commercial Arb. Rules r. 38(c) (2016). JAMS shall "promptly appoint" an emergency arbitrator, which is "in most cases" within twenty-four hours from the initial request for an emergency arbitration. JAMS Comprehensive Arb. Rules & Procedures r. 2(c)(ii) (July 1, 2014). Upon appointment, AAA requires the emergency arbitrator to establish a schedule for consideration of the application for emergency relief, "as soon as possible, but in any event within two business days of appointment." Am. Arb. Ass'n, Commercial Arb. Rules r. 38(d) (2016). JAMS also requires the emergency arbitrator to establish a schedule "within two business days, or as soon as practicable thereafter." JAMS Comprehensive Arb. Rules & Procedures r. 2(c)(iii) (July 1, 2014).

analysis above, in *Smart Tech* "the Court decline[d] to exercise its discretion to issue preliminary relief." *Id.*

Defendant respectfully submits that this Court should follow the cogent analysis in *TKS* and *Smart Tech*, and the injunction of the Supreme Court that arbitration agreements must be rigorously enforced according to their terms.  Accordingly, this Court should deny Plaintiff's Motion for a preliminary injunction, so that Plaintiff can seek its interim relief in arbitration, as it agreed to.

## II. ALTERNATIVELY, PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED ON THE MERITS.

### a. Standard

Generally, "a party seeking a preliminary injunction must ordinarily establish: (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; (3) that the balance of hardships tips in its favor; and (4) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v Activas PLC*, 787 F.3d 630, 650 (2d Cir. 2015), *cert. dismissed sub nom., Allergan PLC v. New York ex rel. Schneiderman*, 136 S. Ct. 581 (2015) (citations omitted); *Benihana, Inc. v. Benihana Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). "[O]ne should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v Armstrong*, 520 US 968, 972 (1997) (emphasis in original).

### b.  Plaintiff Has Not Demonstrated Irreparable Harm.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *Rodriquez ex rel. Rodriquez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999); *Fireman's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990) ("The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant.").  Moreover, "the moving party must show that [irreparable] injury is likely before the other requirements for an injunction will be considered." *Kamerling v Massanari*, 295 F3d 206, 214 (2d Cir 2002).  "If the movant does not carry his burden to establish that he will suffer irreparable harm absent the issuance of an injunction,  a court need not consider the other factors, such as likelihood of success on the merits." *Purgess v Parauda*, 2021 WL 2269540, at *8-9 (SDNY 2021).

The Second Circuit has held that in order to be deemed 'irreparable,' "[t]he injury must be one requiring a remedy of more than mere money damages." *Tucker Anthony Realty Corp. v Schlesinger*, 888 F2d 969, 975 (2d Cir 1989); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 870, 72 (2d. Cir. 1979) ("Irreparable injury means injury for which a monetary award cannot be adequate compensation.").  Of particular relevance here, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Malarkey v Texaco, Inc.*, 794 F Supp 1248, 1250 (SDNY 1992) (*quoting Wisconsin Gas Co. v. Federal Energy Regulatory Comm.,* 758 F.2d 669, 674 (D.C. Cir. 1985)).  "Even in such cases, however, the movant ***must show*** that the alleged threat of harm is 'actual and imminent' rather than remote or speculative." *Sarwil Assoc., L.P. v Steinbach Stores*, 1996 WL 280829, at *8 (NDNY 1996) (emphases added).; *see also Consolidated Brands, Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986) (to establish irreparable harm, plaintiffs must demonstrate "an injury that is neither remote nor speculative, but actual and imminent").  As the Second Circuit has made

clear, in such cases "the movant [must] ***provide[ ] evidence*** of damage that cannot be rectified by financial compensation." *Tucker,* at 975 (emphasis added).

This is fatal to Plaintiff's Motion, which is devoid of any evidence of irreparable harm whatsoever.  In essence, Plaintiff's Motion hinges upon a conclusory assertion that unless they receive $90,000 from account debtors, their business will close:

> Since [Defendant issued UCC 9-406 notices], Plaintiff has not received a single payment from these customers, and there is approximately $90,000 in outstanding revenue that our customers have not paid to us. Unless this money is immediately released to us, this will be the last week that Plaintiff will be in business, as we have no money to pay our employees or vendors, and we will have no choice but to shut down the company that we spent 11 years building from scratch.

D.E. 5-2, ¶¶ 12-13.  Noticeably absent from the ninety pages of Plaintiff's papers is anything whatsoever to substantiate these conclusory assertions.  Absent from Plaintiff's motion, for instance, are a balance sheet or a profit and loss statement showing the financial state of Plaintiff's business.  Further, there is not even a description in Barker's testimony of Plaintiff's assets versus liabilities.  Further, there is no explanation as to why $90,000 is essential – what are Plaintiff's payroll obligations?  What are its other obligations?  Why are these obligations immediately necessary to remain in business?  Does Plaintiff have access to credit or capital infusion from its shareholders or other equity investors and/or investments?  What prior attempts has Plaintiff made to pay these unidentified expenses?  Can these expenses be delayed?  In sum, Plaintiff's submissions identify no particular receivables, assets, liabilities, expenses – nothing.

This is woefully insufficient to meet the high bar for granting a preliminary injunction. The burden to demonstrate irreparable harm is not satisfied by "a few conclusory paragraphs." *Atari Interactive, Inc. v Printify, Inc.*, 2024 WL 283641, *26 (S.D.N.Y. Jan. 25, 2024); *see also UMG Recs., Inc. v OpenDeal Inc.*, 2022 WL 2441045, at *25 (SDNY July 5, 2022) ("conclusory

statements . . .will not justify an irreparable harm finding").  But that is all – less even – than Plaintiff has offered in its two paragraph testimony of the Plaintiff's managing member.  In *TK Servs.,* for instance, the Court held that the declaration of Plaintiff's CEO, which contained conclusory predictions that "TSK will be forced to go out of business," "did little to make the necessary showing of a threat to the company's very existence."  *TK Servs.,* 263 F Supp 3d at 72. That is precisely the case here – Barker's conclusory statements cannot meet the burden to establish irreparable harm.  That would require *evidence,* and the Plaintiff has offered none.  This requires denial of the Motion.  *See, e.g., Convergen Energy WI, LLC v L'Anse Warden Elec. Co., LLC*, 2020 WL 5894079, at *18 (SDNY 2020) (Liman, J.) ("Plaintiff's evidence does not approach the quality of the evidence . . . that is necessary to support preliminary injunctive relief. Plaintiff has not . . .  presented evidence that the loss will be so great as to threaten the existence of its business"); *Tucker,* at 975 ("movant [must ***provide[ ] evidence*** of damage that cannot be rectified by financial compensation") (emphasis added); *Sarwil Assoc,* 1996 WL 280829, at *8 ("the movant ***must show*** that the alleged threat of harm is 'actual and imminent' rather than remote or speculative.") (emphasis added).  Having failed to meet the *prima facie* burden, Plaintiff cannot cure its failure to meet its initial burden by furnishing documents, facts, or evidence for the first time in its reply. *Travelers Indem. Co. v Excalibur Reins. Corp.*, 2013 WL 4012772, *5, (D. Conn. Aug. 5, 2013).

In sum, "[w]hen moving the court for a preliminary injunction, plaintiffs bear the burdens of ***production*** and persuasion." *Qualls v Rumsfeld*, 357 F Supp 2d 274, 281 (DDC 2005) (emphasis added).  The movant must offer "credible evidence," (*id.*), and the "proof to support a preliminary injunction must be strong and clear" (*Societe Comptoir de L'Industrie Cotonniere, Establissements Boussac v Alexander's Dept. Stores, Inc.*, 190 F Supp 594, 601 (SDNY 1961)).  Here, Plaintiff has

produced no "evidence," credible or otherwise, no "proof" whatsoever, never mind proof "strong and clear" enough to warrant the extreme remedy of injunctive relief. Thus, the Motion must be denied at the outset, and this Court "need not consider the other factors[.]" *Purgess v Parauda*, 2021 WL 2269540, at *8-9 (SDNY 2021) ("If the movant does not carry his burden to establish that he will suffer irreparable harm absent the issuance of an injunction, a court need not consider the other factors, such as likelihood of success on the merits.").[7]

### c.  Plaintiff Has Not Demonstrated A Likelihood Of Success On The Merits.

#### i.  Plaintiff's Claim For A Declaratory Judgment That The Agreement Is Usurious Is Meritless As A Matter of Law.

It is black letter law in New York that business entities are barred from asserting usury as the basis for a claim and may assert violations of New York's usury statutes only as an affirmative defense to a pending claim. *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664 (2d Dept. 2020); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802 (1st Dept. 1991); *Arbuzova v. Skalet*, 92 A.D.3d 816 (2d Dept. 2012); *Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008); *Colonial Funding Network, Inc. v. Epazz, Inc*., 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017). Plaintiffs cannot circumvent the prohibition against asserting a claim

---

[7] At a minimum, this Court should require an evidentiary hearing. "It is settled law in this Circuit that motions for preliminary injunctions should not be decided on the basis of affidavits when disputed issues of fact exist." *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (quoting *Commodity Futures Trading Comm'n v. Incomco, Inc.,* 649 F.2d 128, 131 (2d Cir.1981)). "The existence of factual disputes necessitates an evidentiary hearing … before a motion for a preliminary injunction may be decided." *Commodity Futures,* 649 F.2d at 131; *see also Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 747 (2d Cir. 1987) ("On a motion for preliminary injunction, where 'essential facts are in dispute, there must be a hearing … and appropriate findings of fact must be made") (quoting *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir. 1981)).

At bottom, this is all the more reason to deny the motion, dismiss this action, and put the issue of whether injunctive relief is warranted before the arbitrator, where it belongs, and where the remainder of this dispute will be adjudicated.

for usury by affixing different labels to its claims. *Intima-Eighteen, Inc.*, 568 N.Y.S.2d at 804 ("[A] party may not accomplish by indirection what is directly forbidden to it.").

Plaintiff explicitly asks the Court to grant a judicial declaration that the Agreement was void for usury.  D.E. 1, ¶¶146-150.  Thus, Plaintiff asks the Court to find that the Agreement "was really a usurious loan" and that the Agreement and subsequent "UCC lien is void and without effect."  *Id.* at ¶¶146-47 and 150.   This is obviously, then, a usury claim to which Plaintiff has merely affixed the label "declaratory relief."  But the case law is unequivocal that Plaintiff is barred from asserting a cause of action to invalidate the Agreement for usury.  *Streamlined Consultants, Inc. v EBF Holdings LLC*, 2022 WL 4368114 (S.D.N.Y. Sep. 20, 2022); *Paycation Travel v. Glob. Merch. Cash*, 192 A.D.3d 1040 (2d Dept. 2021).  Indeed, earlier this year a decision from the Southern District dismissed an identical claim for delaratory relief made by Plaintiffs' counsel for this exact reason.  *Collins v MCA Receivables, LLC*, 2024 WL 246111 (S.D.N.Y. Januar 23, 2024) (Torres, J.).   Plaintiff thus has no possibility of success on the merits for its first claim, and this Court should end its analysis there.

Nonetheless, Plaintiff's usurious loan argument fails as a matter of law because the transaction was not a loan subject to usury laws. Under New York law, it is axiomatic that a contract cannot be usurious if, as here, it is not a loan. *See, e.g.*, *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances, not investments."); *Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dept. 2022) ("where there is no loan, there can be no usury," rejecting usury challenge to purchase and sale of future receivables agreement as a matter of law) (quoting *LG Funding,* 181 A.D.3d at 665); *Donatelli v. Siskind*, 170 A.D.2d 433, 434 (2d Dept. 1991) (same).

Fora has already briefed why Plaintiff's usurious loan theory fails as a matter of law under controlling appellate authority in its motion to dismiss. ECF Doc. 16, pp.7-17. For the purposes of efficiency and avoiding unnecessary duplication, Fora incorporates that argument as though fully set forth herein. Applying that law to Fora's contracts, New York's courts have consistently held that Fora's Agreements are not loans subject to New York's usury laws. *Fora Financial Funding, LLC v. Nathan's Realty, LLC*, 2024 N.Y. Misc. LEXIS 3005, at *2 (Sup. Ct. Nassau Co. 2024) ("... the plaintiff has established as a matter of law that the agreement is a 'revenue purchase agreement' or 'merchant cash advance agreement' rather than a loan ... conclusory assertions of [defendants'] counsel, who lacks personal knowledge of the facts, are of no probative or evidentiary significance.") (citations omitted); *Fora Fin. Asset Securitization 2021, LLC v. Elite TXP Servs. LLC*, 2024 NY Slip Op 32249(U) (Sup. Ct.), at *10-11 (Sup. Ct. Nassau Co. 2024) ("Defendants' argument that the agreement at issue is a usurious, unenforceable loan is unavailing ... as the agreement is not a loan, defendants' argument that it is unenforceable is without merit.") (citations omitted); *Fora Fin. Funding, LLC v. Reel Appeal Sport Fishing L.L.C*, 2024 N.Y. Misc. LEXIS 1616, at *3 (Sup. Ct. Nassau Co. 2024) ("The law is clear in New York that a Purchase and Sale of Future Receivables Agreement (Revenue Advance) is not a loan and the usury laws do not apply."); *Fora Fin. Asset Securitization 2021, LLC v. Hialeah FL Parts Inc.,* 2024 NY Slip Op 31503(U), ¶ 3 (Sup. Ct.) (Sup. Ct. Nassau Co. 2024) ("... the transaction set forth in the parties' agreement is not a loan . . .") (citations omitted); *Fora Financial Advance, LLC v. Doorectory Inc*, 2024 N.Y. Misc. LEXIS 1285, at *3-4 (Sup. Ct. Nassau Co. 2024) ("... the Agreement does not contain an interest rate scheduled, there is no fixed time by which the defendants are required to remit payments, there is a clause stating that bankruptcy does not constitute a breach of the Agreement and the Agreement contains an express reconciliation clause. As such, dismissal of

the defendants' affirmative defenses is warranted under these circumstances.") (citations omitted); *Fora Fin. Asset Securitization 2021 LLC v. Ideal Comfort Heating & Cooling Corp.*, 2023 NY Slip Op 32185(U), at *7-8 (Sup. Ct. Nassau Co. 2023) (". . . the Court finds that the Agreement is not a usurious loan . . ."). In short, the Plaintiff's Agreement has been consistently upheld as an enforceable purchase and sale of receivables, not a loan subject to any defense based on usury. Plaintiff's motion and pleading submit nothing that would suggest this Court would, could, or should depart from settled law rejecting their usury argument.

Indeed, Plaintiff's theory that alleged non-compliance with a reconciliation provision can retroactively convert a transaction into a loan is wrong as a matter of law. *OriginClear Inc. v GTR Source, LLC*, 2021 WL 5907878 (W.D.N.Y. 2021) (distinguishing usury from breach of contract); *FCI Enters. Inc. v Richmond Capital Group, LLC*, 2019 NY Slip Op 30711[U] (Sup. Ct. Kings 2019) (explaining that "[t]he mere fact the complaint alleges the defendants failed to honor the reconciliation provisions of the agreement does not thereby render the debt as unenforceable under the RICO statute. If the agreement was not usurious at the outset no subsequent conduct can ab initio render the agreement usurious.").

### ii. Plaintiff's Claim For Breach of Contract Fails To Plead A Cause Of Action.

Plaintiff's second cause of action for breach of contract does not have a likelihood of success on the merits for essentially the same reason that Plaintiff has failed to demonstrate irreparable harm – because it has not substantiated conclusory assertions with any factual support whatsoever.

The elements of a breach of contract claim are "the existence of a contract, the plaintiff's performance thereunder, the defendants breach thereof, and resulting damages." *Fawer v. Shipkevich PLLC*, 180 N.Y.S.3d 907, 908 (1st Dept. 2023). Here, Plaintiff's breach of contract

claim fails because: (a) Plaintiff has failed to allege facts sufficient to establish its own performance, a breach by Fora (or FFW), and damages; (b) Plaintiff alleges conduct expressly permitted by the Agreement; and (c) Plaintiff's own exhibits show its conclusory assertions to be false.

According to Plaintiff's Complaint, the breach of contract claim hinges upon the following allegations:

> 153. Defendant was specifically informed that Plaintiff did not have receivables in an amount necessary to support the weekly payments.
>
> 154. Rather than reconciling the payments based on Plaintiff's actual receivables, Defendant instead breached the parties' agreement and simply ignored Plaintiff's request.
>
> 155. Defendant did this knowing that Plaintiff did not have receivables matching the alleged receivables justifying the amount of the weekly payment, and knowing that Defendant would default under such payments.
>
> 156. Plaintiff then predictably defaulted under the agreement, and Defendant used the opportunity to send out UCC lien letters to Plaintiff's customers to wrongfully freeze and abscond with Plaintiff's receivables.
>
> 157. Accordingly, Defendant materially breached the parties' agreement and damaged Plaintiff by on multiple occasions failing to legitimately reconcile the account.
>
> 158. As a result of Defendant's actions in breach of contract, Defendant has caused substantial harm and damages to Plaintiff, including the freezing of Plaintiff's revenue and the imminent destruction of Plaintiff's business.

D.E. 1, ¶¶153-57.[8]

---

[8] Plaintiff includes a paragraph advancing an alternative theory that Fora breached the Agreement by charging $10,626 in fees. The alternative theory fails as a matter of law because a breach of contract claim cannot be premised on conduct expressly permitted by the contract. See *Stokes v. Lusker*, 425 F. App'x 18, 22 (2d Cir. 2011) *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 2021 WL 4033249 (E.D.N.Y. Sept. 3, 2021). There is no dispute that the Agreement unequivocally provides for a $10,626.00 processing fee. D.E. 5-5, p.1. The allegation that "Defendant had little to no actual processing costs" (D.E. 1, ¶68) is fundamentally irrelevant to a breach of contract theory because Plaintiff agreed to the fee in the Agreement and Fora could not have breached the Agreement by collecting the fee. This would not form the basis for any other legal theory either as there is no allegation that Fora misrepresented the reason for the fee.

When pleading breach of contract claims, it is not enough to assert bare allegations that a party failed to take certain actions, thereby resulting in a breach. *In re Ditech Holding Corp.*, 2024 WL 3249957 (Bankr. S.D.N.Y. 2024) (citing *Iqbal* and holding breach of contract claim failed to satisfy pleading requirements of Rule 12(b)(6), because it was not enough to plead bare assertion that Ditech failed to credit her payments under the Note between 2013 and 2015, without "any factual detail"). Here, Plaintiff's theory of a breach of contract is devoid of facts that would be sufficient to plead a breach. Essentially, Plaintiff is alleging that Defendant breached the Agreement by refusing to reconcile; this theory of breach relies necessarily on the assertion that a reconciliation was warranted. At a bare minimum, then, to support an allegation that a reconciliation was warranted, Plaintiff would have to allege its actual receivables during a particular time period, such to provide "any factual detail" whatsoever to support its otherwise bare assertion.

Fatal to Plaintiff's contract claim, nowhere in the Complaint does Plaintiff allege its actual receivables during any particular time period. D.E. 1. Nowhere in the Complaint does Plaintiff allege how a reconciliation figure calculated by FFW or Fora was ever wrong. D.E. 1. Instead, Plaintiff speaks in conclusory fashion about how "business went to a crawl" and that it "complained....because there was not a lot of business." D.E. 1, ¶¶101-105. However, Plaintiff repeatedly describes how FFW reconciled time and again, adjusting payments through at least April 2024. *Id.* In short, the questions left unanswered are fatal to the breach of contract claim: What were Plaintiff's revenues? Why were the regular adjustments to Plaintiff's remittances wrong? How specifically do any of the allegations constitute a breach of the Agreement's terms?

More granularly, Plaintiff couches its core allegations in terms of what "Barker complained," rather than facts. D.E. 1, ¶104. Indeed, Plaintiff's core allegations about June 2024

15

are not about what its actual revenues were versus any calculation performed by FFW, but rather Plaintiff talks about what Barker (the corporate Plaintiff's owner and principal) claimed in an e-mail and a telephone call.  D.E. 1, ¶107-08.  This is, at bottom, not a fact allegation, but an allegation of an inadmissible hearsay statement, being used in an attempt to prove the truth of the claim about what its receivables were, rather than a fact allegation about what its receivables were.  But what Barker alleged in a hearsay statement is not actually "any factual detail" (*Ditech,* *15) as to what the actual receivables were for any particular time.  Rather than plead facts about its receivables to support why Plaintiff thinks calculations from FFW were wrong, Plaintiff relies on bare conclusions and Barker's hearsay statements.  Even if Barker's hearsay could have been sufficient, the e-mail annexed to the Complaint has Barker claiming the Plaintiff has "$690,000" in receivables, and making claims *not* that the business has no revenue, but that bank statements would show "$34,000" in deposits which were, Barker asserts, not actual revenue but rather an alleged equity infusion.  D.E. 5-6, p.1.  Relatedly, Plaintiff's own exhibit shows Barker asserting multiple times not that Plaintiff had no revenue, but that revenues were merely "down" with "projections" being "low."  *Id.*, p.3.  Notably, rather than requesting a reconciliation or disputing that any prior calculation was wrong, Plaintiff's principal was asking for "a pause in billing" or to refinance with "a loan to pay off the existing balance."  *Id.*

In sum, Plaintiff's reliance upon inaccurate assertions about its own hearsay statements, and legal conclusions about a failure to reconcile unsupported by any factual detail whatsoever, are not a substitute for fact allegations about its actual receivables amounts versus its actual payments.  *In re Pall Corp.*, 2009 WL 3111777 (E.D.N.Y. 2009) ("'hearsay allegations[] and 'bald assertions' . . . will not defeat a Rule 12(b)(6) motion.'"); *In re Ditech Holding Corp.*, 2024 WL 3249957 (Bankr. S.D.N.Y. 2024) (bare assertions without actual fact allegations insufficient

to survive 12(b)(6) motion).  At no point does Plaintiff ever allege facts that would show that Fora

or FFW ever received or collected more than it should have under the Agreement during any time.

This failure to plead facts is fatal to any theory that Plaintiff performed, that FFW or Fora breached,

and that Plaintiff has damages recoverable on a breach of contract theory.  This is fatal to Plaintiff's

breach of contract claim, which thus has no likelihood of success on the merits.

### iii.  Plaintiff's Claim For Fraud Fails To Plead A Cause Of Action

Plaintiff's third cause of action for fraud similarly has no likelihood of success on the merits

because Plaintiff has failed to adequately plead fraud.  In order to state a claim for fraud, a party

must allege 1) a misrepresentation of fact which was false and known to be false by the defendant,

2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, 3) the

plaintiff justifiably relied on the misrepresentation, and 4) plaintiff suffered an injury as a result of

the defendant's fraudulent misrepresentation.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d

173, 178-79 (2011).  Fraud claims are subject to a heightened pleading standard; every element of

a fraud claim must be pled with particularity.  Fed. R. Civ. P. 9(b).

Relatedly, in order to plead causation on a fraud claim, the "plaintiff must show both that

defendant's misrepresentation induced plaintiff to engage in the transaction in question

(transaction causation) and that the misrepresentations directly caused the loss about which

plaintiff complains (loss causation)."  *Laub v. Faessel*, 297 A.D.2d 28 (1st Dept 2002).

Transaction causation is synonymous with but for causation and requires that the alleged

misrepresentation caused the plaintiff to engage in the transaction. *AUSA Life Ins. Co. v. Ernst &*

*Young*, 206 F.3d 202 (2d Cir. 2000).  Here, Plaintiff does not allege facts showing transaction

causation or loss causation and instead once again relies upon pure legal conclusions.  D.E. 1.

Plaintiff does not allege that it would not have entered into the Agreement absent the alleged

misrepresentation by a non-party about UCC-1 filings. *Id.* Indeed, Plaintiff fails to plead facts sufficient to show that the generalized allegations of an e-mail from a non-party broker in April 2023 had any bearing on Plaintiff's entry into a subsequent contract with Fora at the end of June 2023. D.E. 5-4. Furthermore, Plaintiff does not allege how a UCC-1 filing has caused it any actual injury as Plaintiff does not plead facts showing how a UCC-1 filing made it any worse off than if there had been no UCC-1 filing. D.E. 1. Moreover, Plaintiff could not possibly have been defrauded about whether or not a UCC-1 would be filed because Plaintiff explicitly agreed to the filing of a UCC-1 in the Agreement. D.E. 5-5, p.6, Section 1.6.

Additionally, there are no facts anywhere showing Fora offered a loan with a 12% interest rate or made any representations of any kind regarding this matter. A party to a writing is presumed to have read and understood the document and it is wholly insufficient to claim a party did not understand a document that was clearly captioned. *Mar. Midland Bank, N. A. v Idar Gem Distribs., Inc.*, 133 A.D.2d 525 (4th Dept. 1987). Insofar as Plaintiff relies upon the Agreement itself to support this theory, it fails for the additional reason that a fraud claim cannot arise from an alleged misrepresentation made within a contract. *See DynCorp. v. GTE Corp.*, 215 F. Supp.2d 308, 324 (S.D.N.Y. 2002) ("Under New York law, a claim of fraud for breaching representations and warranties provided by a contract is not legally sufficient unless the complaining party can "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation or breach collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and breaches and are unrecoverable as contract damages." [internal citations and quotations omitted]).

Furthermore, Plaintiff's representations are proven false by the statements of Plaintiff's owner, Conrad Barker. Specifically, on a funding phone call prior to executing the Agreement,

Barker represented that he'd "read and understood the terms of the conditions of the purchase and sale of future receivables agreement, and specifically that Fora was purchasing a percentage of the business' future receivables:

> SCOTT LEYDEN: "Please confirm you've read and understood the terms and conditions of the purchase and sale of future receivables agreement."

> CONRAD BARKER:"Yes I did read the terms and conditions and understand."

> SCOTT LEYDEN: "Fora financial advance LLC is purchasing $502,964 of your future receivables for a purchase price of $354,200. The purchased percentage of this agreement is 12% of your future receivables….The remittance amount is going to be $8,112.33 and this is going to be weekly. Fora has processing fee of $10,626, so the disbursement amount which is the Purchase Price less that processing fee is going to net you $343,574…. Does that all sounds correct."

> "That's correct."

*See* Tr., 3:5-10; 4:10-24.[9]  To be clear, nowhere in this call prior to execution of the Agreement, where the terms and conditions of the Agreement were being discussed, was there any mention of "interest"; quite the opposite – the agreement was repeatedly described as a "purchase and sale of future receivables agreement."  *Id, passim.*  Given the foregoing, Plaintiff's fraudulent inducment claim lacks all credibility, and has not been plead with particularity, and has no likelihood of success on the merits.

Finally, and critical to resolution of this Motion, "[d]amages for fraud are measured under the out-of-pocket rule; a plaintiff may only recover actual pecuniary loss that directly resulted from the fraud."  *Vox Adv. & Design, Inc. v Makela*, 2000 WL 1708181 (S.D.N.Y. 2000).[10]  A failure

---

[9] A true and correct copy of the transcript of the funding call is annexed to the Declaration of Jonathan Headley as **Ehxibit D.**

[10] Plaintiff's Complaint tacitly admits that out-of-pocket damages are required.  *See* D.E. 1, ¶ 168 (Cause of Action for Fraudulent Inducement seeking relief "awarding Plaintiff its out-of-pocket damages").

to plead out-of-pocket loss is fatal as a matter of law to any fraud claim.[11]  This is fatal to Plaintiff's claim for fraudulent inducement, as Plaintiff has failed to plead any out-of-pocket loss.  The Plaintiff's Complaint admits on its face that Plaintiff received $343,574.00.  D.E. 1, ¶ 11. But, unsurprisingly, the Complaint never mentions how much Plaintiff actually paid back, or the balance due on the Agreement.  This is because, at present, there is $190,222.49 outstanding because Fora and its assignee have collected only $312,741.51.  *See* Declaration of Jonathan Headley, ¶ 8, **Ex. C** (Transaction History). Thus, **Plaintiff is still the net-beneficiary under this transaction by over $30,000.**  On these facts, the Plaintiff *cannot* plead a fraud claim because it cannot plead actual pecuniary loss and has offered no fact whatsoever that could support an allegation of out-of-pocket damages.  Accordingly, Plaintiff's third cause of action for fraudulent inducement is dead on arrival, with no likelihood of success.  *See, e.g., Vox Advertising & Design, Inc. v. Makela*, 2000 WL 1708181 (dismissing fraud claim where Plaintiff "neither alleges nor presents any evidence that it has paid such sums" sufficient to allege out-of-pocket damages); *Connaughton v Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 143 (2017) ("Here, plaintiff's pleading is fatally deficient because he did not assert compensable damages resulting from defendants' alleged fraud."); *Southwestern Invs. Group, LLC v JH Portfolio Debt Equities, LLC*, 169 AD3d 1510, 1511 (4th Dept. 2019) ("Here, we conclude that, even as supplemented by the affidavit of plaintiff's president, 'plaintiff's pleading is fatally deficient because [it] did not assert compensable damages resulting from defendants' alleged fraud'") (internal citation omitted).

### d.  The Balance of Equities Favors Denying Plaintiff's Motion.

---

[11] *See Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 (2017) ("[a] false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury. . . .").

Plaintiff's Motion, like its pleading, never mentions the balance due on the Agreement. That silence is because no reasonable person could believe the balance of equities favors Plaintiff in light of the outstanding balance on the Agreement.  Fora undisputedly paid the purchase price, less fees, for a total disbursement of $343,574.00 in June, 2023, and purchased $502,964.00 in future receivables.  *See* D.E. 1; D.E. 5-5.  As of the present, more than a year later there is $190,222.49 outstanding, because Fora and its Assignee have collected only $312,741.51.  Even if one were to ignore the time value of money for more than a year, Plaintiff cannot dispute it is still the net-beneficiary under this transaction by over $30,000, at Fora and its Assignee's expense. Granting Plaintiff's request for a preliminary injunction would compound the financial harm Plaintiff has caused to Fora and its Assignee while effectively depriving them of perhaps their only opportunity for even partial relief.

**Plaintiff is still the net-beneficiary under this transaction by over $30,000.**

### III.    IF THE COURT GRANTS THE MOTION IT SHOULD REVISE THE BOND AMOUNT

"The court may issue a preliminary injunction ... only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Where an injunction prevents commercial, money- making activities, as it does here, such a bond is required and will not be excused. *See Zambetti Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010).  As explained, Plaintiff seeks to strip Fora of its contractual and statutory rights and deprive it of an opportunity to be made whole.  Given the outstanding balance on the Agreement is $190,222.40, the current bond required – a mere $1000 – is woefully insufficient to protect Fora's legitimate interests.  Indeed, Plaintiff has offered nothing whatsoever that would suggest a $1000 bond is sufficient whereas, objective math indicates that the balance should at least be in an amount of the

outstanding balance of $190,222.40. Accordingly, Fora respectfully submits this Court should revisit the amount of the requited bond, to more equitably align the bond amount with the relative position of the parties.[12]

## **CONCLUSION**

For the reasons set for above, the Court should deny Plaintiff's Motion in its entirety.

WHEREFORE, Fora respectfully requests that this Honorable Court enter an Order denying Plaintiff's Motion in its entirety and awarding Fora such other and further relief as the Court deems just and proper.

Dated: October 1, 2024

/s/ Christopher R. Murray
Christopher R. Murray, Esq.
Murray Legal, PLLC
Attorney for Defendant
Fora Financial Advance, LLC
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-mail: cmurray@murraylegalpllc.com

---

[12] At the very least, the Court should require the Plaintiff to provide evidence of its inability of means to post a more substantial bond.