UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIVISION 5, LLC,

Plaintiff,

-v-

FORA FINANCIAL ADVANCE LLC,

Defendant.

---

24-CV-6870 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Division 5, LLC ("Division 5") brought the present action to enjoin a collection

of payments due to Defendant Fora Financial Advance LLC ("Fora") under an allegedly

unlawful Merchant Cash Advance ("MCA") contract (the "Agreement").  The Court previously

granted a temporary restraining order and preliminary injunction preventing enforcement of the

Agreement.  *See Div. 5, LLC v. Fora Fin. Advance, LLC*, No. 24-CV-6870, 2024 WL 4663042,

at *7 (S.D.N.Y. Nov. 4, 2024).  Before the Court now is Fora's motion to compel arbitration and

dismiss the complaint.  For the reasons that follow, the motion to compel arbitration is granted

and the case is stayed pending arbitration.

I.    **Background**

A.    **Factual Background**

This case concerns the enforcement of an MCA agreement executed by Fora and

Division 5 in June 2023.  The details of the solicitation and negotiation of that agreement, the

process of executing it, and Fora's efforts to enforce repayment under it are recounted in the

Court's Opinion and Order from November 4, 2024.  *See Div. 5*, 2024 WL 4663042, at *1.  The

parties have not altered their accounts of the underlying facts since the issuance of that Opinion.

Thus, rather than review those facts in depth here, the Court reproduces them as necessary in

Section III below.

The Court's previous Opinion did not, however, discuss the Agreement's arbitration

provisions. In addition to setting forth the terms and conditions of Division 5's MCA, the

Agreement also contains an arbitration clause that Fora now seeks to enforce. In relevant part,

that clause reads:

> **Read the terms of this Clause carefully, as it substantially affects your**
> **rights**. . . . This Clause governs the Purchaser, Seller(s), and any
> Guarantor(s) . . . and third parties related to any Dispute. In this Clause, the word
> "Disputes" has the broadest possible meaning. . . . **You . . . waive the right to:**
> **(1) Have juries resolve Disputes; (2) Have courts, other than small-claims**
> **courts, resolve Disputes; (3) Serve as a private attorney general or in a**
> **representative capacity; and (4) Participate in a class action. UNDER THIS**
> **CLAUSE, COURTS AND ARBITRATORS CANNOT ALLOW CLASS**
> **ACTIONS. You and we waive the right to participate in a class action as a**
> **representative and as a member. Only individual arbitration or small-claims**
> **courts will resolve Disputes. You and we waive the right to have**
> **representative claims. For Sellers and any Guarantors in California, the**
> **foregoing prohibition against class actions shall not apply**. . . . If any portion
> of this Arbitration Clause cannot be enforced, the unenforceable portion will be
> severed and the rest of this Arbitration Clause will continue to apply . . . .

(ECF No. 17-2 ("Agreement") at 11 (emphasis in original).) The arbitration clause then

continues for another page, outlining additional information about the arbitration process, the

tribunal to be used, and the fees to be levied. (*Id.* at 11-12.) In other sections of the Agreement,

there are frequent references to "arbitration as provided in Section 21." (*See*, *id.* at 8 (§ 6.2(f)), 9

(§§ 7.1, 7.5).) The Agreement's signature blocks also contain an "acknowledge[ment] that this

Agreement contains Waiver of Jury Trial, Arbitration and Class Action clauses," and that the

signatories "agree to be bound by the Waiver of Jury Trial, Arbitration and Class Action

clauses." (*Id.* at 3-4.)

In addition to the arbitration provisions in Section 21 of the Agreement, Section 15, entitled "Jurisdiction and Venue," states:

> In the event of a controversy arising out of the interpretation, construction, performance or breach of this Agreement, the parties hereby agree and consent to the sole and exclusive jurisdiction and venue of the federal and state courts in the State of New York, to resolve any and all claims arising out of, relating to or in connection with this agreement or the relationship between the parties . . . .

(*Id.* at 10 (§ 15).)

### B.    Procedural History

Division 5 filed the complaint in this action on September 11, 2024.  (ECF No. 1 ("Compl.").)  On the same day, it filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction (ECF No. 5), which Fora opposed via letter on September 12 (ECF No. 9).  The Court granted the TRO request (ECF No. 10), and converted its TRO into a preliminary injunction on October 11, 2024 (ECF Nos. 27, 31).

Fora moved to compel arbitration and dismiss the complaint on September 20, 2024 (ECF No. 15), and filed a supporting memorandum of law (ECF No. 16 ("Mem.")).  Division 5 opposed the motion on October 11 (ECF No. 26 ("Opp.")), and Fora replied in support of the motion on October 25 (ECF No. 30 ("Reply")).  On March 5, 2025, the parties each filed a letter reporting on the status of arbitration proceedings that had been commenced by Fora, allegedly without Division 5's consent.  (ECF Nos. 33, 34.)

## II.    Legal Standard

"The FAA provides that an agreement to arbitrate is 'valid, irrevocable, and enforceable.'"  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (quoting 9 U.S.C. § 2.)  "This provision establishes 'liberal federal policy favoring arbitration agreements,'" and "requires courts to enforce agreements to arbitrate according to their terms, . . . even when the claims at issue are federal statutory claims."  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95,

98 (2012). "Having made the bargain to arbitrate, the party should be held to it . . . ." *Arciniaga*,

460 F.3d at 235 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

614, 628 (1985)).

"The threshold question facing any court considering a motion to compel arbitration is

therefore whether the parties have indeed agreed to arbitrate," *Schnabel v. Trilegiant Corp.*, 697

F.3d 110, 118 (2d Cir. 2012), which "is determined by state contract law," *Meyer v. Uber Techs.*,

*Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). If the parties have so agreed, then arbitration is mandatory

unless the "party attempting to avoid arbitration . . . show[s] that Congress intended to preclude a

waiver of a judicial forum." *Arciniaga*, 460 F.3d at 235 (quoting *Gilmer v. Interstate/Johnson*

*Lane Corp.*, 500 U.S. 20, 24 (1991)).

If a valid arbitration agreement exists, the "next inquiry is related to the question of

arbitrability, or, in other words, whether an arbitration agreement covers a specific issue."

*Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025). This inquiry proceeds in two

steps. First, the court must ask "whether the court or the arbitrator should be the decision-maker

on the question of arbitrability." *Id.* Second, "if it is for the court to make that determination,"

the court must ask "whether the issues are within the scope of the arbitration agreement and if

the agreement is enforceable." *Id.* While "[t]he FAA provides that the issue of arbitrability

should presumptively be resolved by the courts, . . . [w]hen the parties' contract delegates the

arbitrability question to an arbitrator, the courts must respect the parties' decision . . . unless [the

non-movant] challenged the delegation provision *specifically*." *Id*. at 117-18 (quoting *Henry*

*Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) and *Rent-A-Center, W., Inc. v.*

*Jackson*, 561 U.S. 63, 72 (2010)). Ordinarily arbitration provisions are "severable" from the

remainder of a contract such that unconscionability challenges to the entire agreement go to the

arbitrator, but "where a challenge applies equally to the whole contract and to an arbitration or

delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S.

143, 151 (2024) (quotation marks omitted).

Unless the parties consent to dismissal, "the FAA mandate[s] a stay of proceedings when

all of the claims in an action have been referred to arbitration." *Katz v. Cellco P'ship*, 794 F.3d

341, 347 (2d Cir. 2015).

## III.    Discussion

In response to Fora's motion to compel arbitration, Division 5 argues that the Arbitration

Clause is unenforceable because it conflicts with the forum-selection provision in the same

contract.[1]  According to Division 5, Section 15 of the Agreement states that "the parties hereby

agree and consent to sole and exclusive jurisdiction and venue of the federal and state courts in

the State of New York," which contradicts the Agreement's mandate to arbitrate.  (*Compare*

Agreement at 10 *with* Agreement at 11-12.)  Division 5 argues that this contradiction generates

an ambiguity, which must be construed against Fora, the drafter of the Agreement.  (Opp. at 10.)

Fora responds that Section 15 applies only if the parties voluntarily agree to litigate in court or

with respect to litigation ancillary to arbitration, and does not preclude arbitration.  (Reply at 9-

10.)  Fora also argues that, in any event, "ambiguities as to the scope of the provision would be

---

[1] Division 5 also argues that the motion to compel arbitration is "premature" because it
was filed within thirty days of Fora's transmittal of Notice of Intent to Arbitrate, and because
Fora had allegedly not tried to first resolve the dispute through good-faith negotiations.  (Opp. at
11.)  By now, well over thirty days have passed since Division 5 received Fora's Notice of Intent
to Arbitrate, so that first objection is moot.  As to Division 5's argument about "good faith," Fora
responds that the Agreement contains no such requirement.  (Reply at 11.)  The Court agrees.
The phrase "good faith" appears nowhere in the Agreement, and the notice provision in Section
21 of the Agreement requires only that the parties wait thirty days before proceeding to
arbitration.  (Agreement at 11 (§ 21).)  The only condition precedent is that "the Parties cannot
resolve the Dispute within 30 days" (*id.*), not that either party must submit a "good faith offer" to
the other (*cf.* Opp. at 11).

properly resolved in favor of arbitration." (Mem. at 4 (quoting *PricewaterhouseCoopers LLP v. Rutlen*, 284 A.D.2d 200, 200 (1st Dept. 2001).)

"General canons of contract construction require that where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002) (quotation marks omitted); *see also Israel v. Chabra*, 601 F.3d 57, 62 (2d Cir. 2010) ("[W]hen a . . . clause purportedly conflicts with another clause in a contract, every attempt should be made to harmonize the two provisions using common-law tools of contract interpretation." (quoting *Israel v. Chabra*, 12 N.Y.3d 158, 167 (2009)); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (same); *Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639, 2025 WL 552050, at *12 (S.D.N.Y. Feb. 19, 2025) ("The court must also avoid an interpretation that 'sets up two clauses in conflict with one another.'" (quoting *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348, 362 (2020)) (ellipsis omitted)). However, "[w]here a contractual term is clear and unambiguous, a court may [not] rewrite the term under the guise of interpretation." *Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 536 (S.D.N.Y. 2001).

Here, the Court agrees with Fora that there is a reasonable interpretation of the two clauses that gives them both effect. The Court begins with the Agreement's text. Section 13 locates "sole and exclusive jurisdiction and venue" in "the federal and state courts" of New York. (Agreement at 10.) The relevant question, then, is not whether arbitral forums are courts—they are not—but instead whether locating "jurisdiction" and "venue" in the courts of a particular state precludes the parties from recourse to arbitration. Fora argues that this language guides the choice of particular courts as opposed to other courts, not the selection of courts as opposed to arbitrators. The Court agrees. The relevant entry in the twelfth edition of Black's

6

Law Dictionary defines "jurisdiction" as "[a] *court's* power to decide a case or issue a decree."
*Jurisdiction*, Black's Law Dictionary (12th ed. 2024) (emphasis added).[2]  It defines "venue" as
"[t]he proper or a possible *place* for a lawsuit to proceed."  *Venue*, Black's Law Dictionary (12th
ed. 2024) (emphasis added).[3]  If jurisdiction is understood as a property of courts, and venue is
understood as a reference to geographic place rather than a particular institution or forum, then
Section 13 may be interpreted as imposing limitations on the *courts* in which claims arising from
the Agreement may be heard—namely, that those courts be in New York.  Nothing about Section
13, so interpreted, prevents the parties from resolving their claims before non-court entities, like
an arbitral tribunal.

In practical terms, this interpretation gives meaningful effect to both clauses.  The
arbitration clause has effect insofar as it compels adjudication in the first instance before
arbitrators.  The venue-selection clause, meanwhile, has effect because "no matter how broad the
arbitration clause, it may be necessary to file an action in court to enforce an arbitration
agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to
invoke the jurisdiction of a court to obtain other remedies."  *Mohamed v. Uber Techs., Inc.*, 848
F.3d 1201, 1209 (9th Cir. 2016) (cleaned up); *cf. Vaden v. Discover Bank*, 556 U.S. 49, 53

---

[2] *See also Jurisdiction,* American Heritage Dictionary (5th ed. 2011) ("The right of a
court to hear a particular case, based on the scope of its authority over the type of case and the
parties to the case."); *but see Jurisdiction*, Webster's Third New International Dictionary of the
English Language Unabridged (3d ed. 2002) (defining "jurisdiction" without reference to courts:
"the legal power, right, or authority to hear and determine a cause considered either in general or
with reference to a particular matter").

[3] *See also Venue*, American Heritage Dictionary (5th ed. 2011) ("The court where a
lawsuit may or should be tried, usually because the cause of action arose in that locality." (first
legal definition)); *Venue,* Webster's Third New International Dictionary of the English Language
Unabridged (3d ed. 2002) ("(1): a place (as a county) in which alleged events from which a legal
action arises take place (2): the place from which the jury is drawn and in which trial is held in
such an action" (legal definition)).

(2009) (discussing when petitions to compel arbitration may be brought in district courts).

Considering a similar situation, the Ninth Circuit reached the same conclusion. *Mohamed*, 848

F.3d at 1209. As in that case, it is at least reasonable to believe "that the venue provision here

was intended for these purposes, and to identify the venue for any other claims that were not

covered by the arbitration agreement. That does not conflict with or undermine the agreement's

unambiguous statement identifying arbitrable claims and arguments." *Id.*[4] A number of lower

courts have similarly reconciled broad forum-selection clauses with mandatory arbitration

clauses. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 523 (E.D.N.Y. 2017) ("[T]he

court . . . agree[s] with the Ninth Circuit that the Arbitration Provision is consistent with the

'exclusive jurisdiction' language of the forum selection clause."); *Sena v. Uber Techs. Inc.*, No.

CV-15-2418, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (similar); *Rimel v. Uber Techs.,

Inc.*, 246 F. Supp. 3d 1317, 1325 (M.D. Fla. 2017) ("Courts examining identical or substantially

similar Service Agreements have consistently reached the same conclusion.").[5]

---

[4] Because Uber at one point drafted contracts with similar forum-selection clauses, there has been extensive litigation in courts around the country concerning this issue, though most of the cases have arisen in California.

[5] Other courts have reached similar conclusions via slightly different reasoning. For example, some courts have distinguished clauses based on the fact that they use narrower words like "legal suit, action, or proceeding" instead of broader words like "dispute, controversy, or claim." *See, e.g.*, *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, No. 22-CV-1187, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023). That approach is inapplicable here, as both the forum-selection clause and arbitration clause use equally broad terminology to define their respective scopes. Other courts have relied on the existence of an opt-out provision within the arbitration clause, *see, e.g.*, *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 846 (W.D. Tex. 2016), or have construed forum-selection clauses instead as personal jurisdiction waivers, *see, e.g., Child Dimensions Ins. Co. v. Lexington Ins. Co.*, No. 09-CV-670, 2009 WL 10688226, at *2-3 (N.D. Ohio July 16, 2009). The common thread is that these courts have construed forum-selection clauses as limited when accompanied in the same contract by a broad, exclusive, mandatory arbitration provision.

Division 5's arguments to the contrary are unavailing.  First, Division 5 points out that the forum-selection clause here uses broad language in defining its scope.  (Opp. at 7-8.)  The clause applies to all "controvers[ies] arising out of . . . [the] Agreement," and to "any and all claims arising out of . . . [the] [A]greement or the relationship between the parties."  (Agreement at 10.)  This is irrelevant, though, because the clause only imposes limits on "jurisdiction" and "venue" with respect to those controversies and claims.  As explained above, it is reasonable to interpret this language as allowing arbitration.

Second, Division 5 invokes a line of cases in which courts have declined to compel arbitration based on subsequently executed forum-selection clauses.  *See, e.g.*, *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011); *see also Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1231 (9th Cir. 2022), *aff'd on other grounds*, 602 U.S. 143 (2024); *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 217 (2d Cir. 2014) (conflict between a contract and FINRA rules); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (same).  *But see UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 329 (4th Cir. 2013) (interpreting the conflict with FINRA rules as a matter of waiver and finding none); *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 102-3 (3d Cir. 2018) (same).

Crucially, these cases all involved multiple contracts, with the forum-selection provisions executed later in time than the arbitration provisions.  They did not involve putatively conflicting provisions in the same contract.  In multiple-contract cases, courts have applied the principle that the later-in-time contract "supersedes the [earlier-in-time] arbitration clause," rather than attempting to harmonize apparently conflicting terms so as to give them all effect.  *See Suski*, 55 F.4th at 1231 (distinguishing a multiple-contracts case from *Mohamed*, 848 F.3d at 1209).  Were

9

there two separate contracts here, the Court would be free to choose the best interpretation of each, even if the result were to nullify aspects of the earlier-in-time contract. Where there is only one contract, however, reasonable efforts must be made to reconcile conflicting provisions.

Most of the cases invalidating earlier-in-time arbitration provisions also involved forum selection clauses that, unlike the one here, "specifically preclude[d] arbitration." *Applied Energetics*, 645 F.3d at 526 (quotation marks omitted). For example, the forum-selection clause in *Applied Energetics* stated that disputes "shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York," while the arbitration agreement stated that "any dispute . . . shall be resolved through binding arbitration." *Id.* at 523. The court therefore determined that "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Id.* at 525. In doing so, the court relied on the mandatory nature of "shall" and the fact that "adjudicated" "is a clear and unmistakable reference to judicial action." *Id.* at 525. Neither of those words is present in the contract here. Most of the other, similar cases involve similarly unambiguous language. *See, e.g.*, *Golden Empire Schs. Fin. Auth.*, 764 F.3d at 211 ("all actions and proceedings . . . shall be brought in the United States District Court in the County of New York"); *UBS Fin. Servs*, 706 F.3d at 328 (same "shall be brought" language); *City of Reno*, 747 F.3d at 736 (same "shall be brought" language).[6]

---

[6] A notable outlier is *Suski*, in which the Ninth Circuit invalidated an earlier-in-time arbitration clause based on "exclusive jurisdiction" language similar to the language here. *Suski*, 55 F.4th at 1231. However, *Suski* still did not involve a singular contract. *Id.* Thus, while *Suski* may be persuasive as to the *best* interpretation of the language in this case, it does not rule out other, reasonable interpretations. To the contrary, the Ninth Circuit did enforce an arbitration provision in *Mohamed* based on the fact that the purportedly conflicting provisions were contained in the same contract. *See Mohamed*, 848 F.3d at 1209.

The Court agrees with Division 5 that the forum-selection clause here is unlike the one in *Bank Julius*, which explicitly allowed the parties' "to bring an[] action or proceeding . . . in the courts of other jurisdictions," and was therefore not preclusive of arbitration.  *Cf. Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 282 (2d Cir. 2005).  However, the forum-selection clause here need not be as permissive as that one for the Court to reconcile it with the arbitration provision, given that they are in the same contract.

Finally, Fora argues that the Court should apply an overarching presumption in favor of arbitration pursuant to the FAA.  The Second Circuit rejected precisely that argument in *Applied Energetics*, explaining that such a presumption applies only "where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." 645 F.3d at 526 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules.").  "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics*, 645 F.3d at 526.  In any event, as explained above, the Court need not rely on a presumption in favor of arbitration in order to reconcile the forum-selection and arbitration clauses here.

Because the Court is compelling arbitration of Division 5's claims, it does not reach Fora's substantive arguments in favor of dismissal.  The Court's previously ordered preliminary injunction shall remain in effect until such a time as it is modified or vacated by this Court or by a duly appointed arbitrator.

## IV.    Conclusion

For the foregoing reasons, Fora's motion to compel arbitration is GRANTED.  This

action is hereby STAYED pending arbitration.

The Clerk of Court is directed to close the motion at Docket Number 15 and to mark this

case as stayed.

SO ORDERED.

Dated:  May 30, 2025
        New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge

12